Timothy E. JORGENSEN, by and on Behalf of his mother and natural guardian, Sharon L. JORGENSEN, Appellants,

v.

The AUTO–OWNERS INSURANCE COMPANY, Respondent.

and

Timothy E. JORGENSEN, by and on Behalf of his mother and natural guardian, Sharon L. JORGENSEN, Respondents,

v.

Robert J. JORGENSEN, Appellant.

Nos. C6–84–1548, C7–84–1588.

Court of Appeals of Minnesota.

Jan. 8, 1985.

Leo M. Daly, St. Paul, for Timothy Jorgensen.

James A. Reding, Reding & Votel, St. Paul, for Auto-Owners Ins. Co.

George F. Vogel, Holst, Vogel, Erdmann & Vogel, Red Wing, for Robert Jorgensen.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

Timothy Jorgensen was severely burned when he opened the trunk of his father's

car and a can of gasoline stored inside exploded. He appeals from a declaratory judgment determining that he is not entitled to no-fault benefits from his father's automobile insurance policy because his injuries did not arise from the maintenance or use of an automobile. His father, Robert Jorgensen, also appeals from a summary judgment in the main negligence action determining that his homeowner's insurer rather than his automobile liability insurer is obligated to defend him and provide coverage. We reverse.

## FACTS

In May 1982 Timothy Jorgensen went to the Holiday gas station where his father worked to get a ride home. Just before Tim arrived his father had placed a six-gallon can of gasoline for their home lawn mower in the trunk of his Oldsmobile Cutlass.

Shortly after Tim arrived, Robert Jorgensen asked him to retrieve a set of jumper cables from the trunk of the Cutlass to lend to a customer. When Tim turned the trunk key, he heard a "pop," and the trunk exploded open. Tim was not hurt, although the trunk was immediately engulfed in flames. Fearing that the car might blow up and cause the gas station to explode, he reached into the trunk to remove the gas can. He either tipped the can or caught it on the edge of the trunk. Gasoline spilled over the right side of his body and ignited his clothing. His right leg and right hand were badly burned and are now scarred. His medical expenses currently total about $10,000.

For purposes of summary judgment the parties agreed that a frayed wire connected to the trunk light had caused either a spark or an explosion of the light bulb, which in turn ignited the gasoline fumes.

Tim Jorgensen applied for no-fault benefits from Auto-Owners Insurance Co., his father's automobile insurer. Auto-Owners denied the benefits on the ground that the injury did not arise out of the maintenance or use of an automobile. Tim brought a declaratory judgment action against Auto-Owners to determine his right to no-fault benefits. On cross-motions for summary judgment, the trial court determined that Tim was not entitled to no-fault benefits under the policy because his injuries did not arise out of the maintenance or use of an automobile within the meaning of the Minnesota No-Fault Act.

Tim also brought an action against his father, alleging negligent maintenance of the car and negligent supervision of himself. In this action Auto-Owners and Robert Jorgensen (represented by an attorney for Citizen's Security Mutual, his homeowner's insurer) brought cross-motions for summary judgment to determine whether the automobile or homeowner's insurer provided coverage and had a duty to defend Robert Jorgensen. The trial court found that the automobile policy did not provide coverage because the car was not being used for transportation purposes, but the homeowner's policy did provide coverage. The Jorgensens appeal from these respective judgments.

## ISSUES

1. Did Timothy Jorgensen's injuries arise out of the maintenance or use of a motor vehicle within the meaning of the Minnesota No-Fault Act?

2. Does the father's automobile or homeowner's liability insurance policy provide coverage?

## ANALYSIS

### I

Minn.Stat. § 65B.44, subd. 1 (1982), provides that:

> Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle * * *.

The phrase, "maintenance or use of an automobile," is defined as:

> maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it.

Maintenance or use of a motor vehicle does not include * * * conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it. Minn.Stat. § 65B.43, subd. 3 (1982).

█ For an injury to arise out of the use or maintenance of a motor vehicle, there must be some causal connection between the injury and the use of the vehicle for transportation purposes. *Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn.1981). The requisite connection between use and injury is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Id.* The vehicle itself must be an "active accessory" to the injury sustained. *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598, 603 (Minn.1977). Each case presenting this issue turns to a great degree on the particular facts presented. *Associated Independent Dealers, Inc. v. Mutual Service Insurance Cos.*, 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975).

The trial court found that the injury lacked the connection between "the injury and use of the vehicle for transportation purposes" because Tim had not intended to drive the car at the time of the injury.

The Minnesota Supreme Court has interpreted the phrase, "maintenance or use of an automobile," the same way for purposes of no-fault benefits and liability coverage. In *Waseca Mutual Insurance Co. v. Noska*, 331 N.W.2d 917 (Minn.1983), the court interpreted the phrase as it was contained in a driver's automobile liability policy. In *Waseca* the driver put two uncovered barrels of smoldering ashes into the back of his pickup truck and drove about six miles to his house. Sparks blew from the barrels during the trip and started fires that burned for at least nine days and covered thousands of acres of land. Numerous farm properties and homes were destroyed. The court found that the property damage was covered by the policy because the vehicle was "a contributing, indeed necessary, cause of the fire." *Id.* at 920.

█ We conclude that the Jorgensen automobile was a contributing and necessary cause of the injuries. The parties stipulated that the defective trunk wire ignited the gas fumes; but for the use of the automobile, the gasoline would not have exploded and burned Timothy Jorgensen. The vehicle was an active accessory to the injury sustained, *see Holm*, 261 N.W.2d at 603, and more than the "mere situs" of the injury, *see Tlougan*, 310 N.W.2d at 117. His effort to prevent further damage by removing the can is not an independent act sufficient to break the causal link; the jury will be able to apportion fault at trial.

The trial court also found that Tim was unloading the vehicle but was not "occupying," "entering into," or "alighting from" it as required by Minn.Stat. § 65B.43, subd. 3. In Minnesota cases involving the loading or unloading of vehicles, courts have uniformly held that if the injury is caused by the condition of the vehicle or because the vehicle itself malfunctions, the causal connection between the injury and use of the vehicle is met. *See, e.g., North River Insurance Co. v. Dairyland Insurance Co.*, 346 N.W.2d 109, 114 (Minn.1984) (the insured was injured as he worked with a tarpaulin or while attempting to get down from a trailer); *Galle v. Excalibur Insurance Co.*, 317 N.W.2d 368, 370 (Minn.1982) (a truck driver intending to open a trailer door was injured when a cable broke); *Petrick v. Transport Insurance Co.*, 343 N.W.2d 876, 879 (Minn.Ct.App.1984), *pet. for rev. denied* April 25, 1984 (a truck driver slipped on oil that had spilled on the floor of the trailer).

Timothy Jorgensen was entering the trunk of the car to remove the jumper cables in the same way the drivers in *Galle* and *Petrick* were entering the trailers. Furthermore, he was injured by part of the vehicle itself, as were the insureds in *North River*, *Galle*, and *Petrick*. As in those cases, the causal connection between the injury and use of the vehicle was sufficient for purposes of the No-Fault Act.

## II

Robert Jorgensen contends that the trial court erred in determining that Citizens Mutual, the homeowner's insurer, provided liability coverage for his son's injuries. He argues that only the automobile policy provides coverage. Timothy Jorgensen argues that both policies provide coverage because his injuries had both vehicle-related and nonvehicle-related causes. *See Waseca Mutual v. Noska,* 331 N.W.2d at 921–23.

Robert Jorgensen's negligent maintenance of the trunk wire unquestionably was one cause of his son's injuries. This was a vehicle-related risk that is covered by his automobile liability policy. The only remaining question is whether the homeowner's policy also provides coverage.

The Citizens Mutual policy provides:

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will

    a.   pay up to our limit of liability for the damages for which the insured is legally liable; and

    b.   provide a defense at our expense by counsel of our choice.  * * *

The policy also excludes bodily injury or property damage "arising out of the ownership, maintenance, use, loading or unloading of * * * a motor vehicle owned or operated by or rented or loaned to any insured * * *."

In *Waseca Mutual* Noska had a homeowner's policy with an identical exclusion clause. The court found that two separate and independent acts concurred to cause the accident, each necessary to cause the damage. *Id.* at 920. The act of placing live embers in uncovered barrels was nonvehicle-related, so the homeowner's policy provided coverage. *Id.* at 923. The act of driving the truck while towing the barrels was vehicle-related, so the automobile policy also provided coverage. *Id.* at 920.

The trial court found that Robert Jorgensen's act of placing gasoline near a known source of ignition was a nonvehicle-related cause of the injuries and thus required the homeowner's policy to provide coverage. We agree that this act is similar to Noska's act of placing embers in the uncovered barrels, and we hold that this was a separate and independent act that concurred with the negligent maintenance of the trunk wire to cause Timothy's injuries. We agree with the court's conclusion in *Waseca Mutual* that

[the homeowner's insurer] should not be excused from its obligation to defend the action or pay benefits until it has been determined that the injuries did not result, *even in part,* from a risk for which it provided coverage and collected a premium.

*Id.* at 923 (quoting *Lawver v. Boling,* 71 Wis.2d 408, 422–23, 238 N.W.2d 514, 521–22 (1976)) (emphasis supplied by *Waseca Mutual* court).

Both parties agree that the alleged negligent supervision is part of the tort of negligent use and operation of a vehicle, *see Fillmore v. Iowa National Mutual Insurance Co.,* 344 N.W.2d 875, 881 (Minn.Ct. App.1984), and that it therefore falls within the exclusion clause of the homeowner's policy.

## DECISION

Timothy Jorgensen's injuries arose out of the maintenance or use of an automobile, so he is entitled to no-fault benefits under the Auto-Owners policy. Both Auto-Owners and Citizen's Mutual are obligated to provide liability coverage and defend Robert Jorgensen.

Reversed.