Chester J. WICZEK, by Eleanor WICZEK, his personal representative, Respondent,

v.

The SHELBY MUTUAL INSURANCE COMPANY, Appellant.

No. CX–87–1227.

Court of Appeals of Minnesota.

Dec. 15, 1987.

John Borman, Robins, Zelle, Larson & Kaplan, St. Paul, for respondent.

Kenneth P. Gleason, Sandra J. Skluzacek, Mahoney, Dougherty & Mahoney, Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN *, JJ.

## OPINION

SEDGWICK, Judge.

The Shelby Mutual Insurance Company (Shelby) appeals from a judgment declaring that respondent Chester Wiczek's death is covered under its automobile no-fault policy. We reverse.

## FACTS

On the night of September 12, 1975, respondent was fatally injured while sleeping in his Coachman travel trailer, a camping vehicle that can be towed behind a car. He had towed the camper to the Dakota County fairgrounds the day before for a camping weekend. A gas furnace heater that was permanently installed in the camper

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 1.

malfunctioned during the night, and respondent died from carbon monoxide poisoning. The camper was unhitched from the towing vehicle and parked at the time of the accident.

The camper was covered by a no-fault policy issued by Shelby. Respondent, by his personal representative, brought this declaratory judgment action to obtain personal injury protection benefits under the policy. The parties stipulated to the facts, including damages. The trial court held that coverage exists, and Shelby appeals.

### ISSUE

Was respondent's death caused by an accident arising out of the use of a motor vehicle as a vehicle? ·

### ANALYSIS

The policy provides:

[Shelby] will pay, in accordance with the Minnesota no-fault automobile insurance act, personal injury protection benefits for [specified expenses] incurred with respect to bodily injury * * * caused by an accident *arising out of the * * * use of a motor vehicle as a vehicle* * * *.

(Emphasis added.)

This provision tracks the language of the no-fault act. The act requires insurance covering losses suffered "through injury arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (Supp.1975); *see* § 65B.48, subd. 1 (Supp. 1975); § 65B.49, subds. 1–2 (1974). That phrase is statutorily defined as follows:

"Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle *as a vehicle*, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it.

Minn.Stat. § 65B.43, subd. 3 (1974) (emphasis added).

The parties agree the camper is a "motor vehicle." *See* Minn.Stat. §§ 65B.43, subd. 2, 168.09, subd. 1 (1974). The dispute is over whether the accident arose from the *use* of the camper "as a vehicle." The trial court ruled that it did; this ruling is a

conclusion of law. *North River Insurance Co. v. Dairyland Insurance Co.*, 346 N.W. 2d 109, 113 & n. 2 (Minn.1984).

In *North River*, the supreme court described the general standard for evaluating this issue:

For an injury to arise out of the use or maintenance of a motor vehicle, "there must be some causal connection between the injury and *the use of the vehicle for transportation purposes.*" * * * The requisite connection is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." * * * The connection is established if "the injury is a natural and reasonable consequence of the use of the vehicle." * * * The vehicle itself must be an active accessory to the injury sustained.

*Id.* at 114 (emphasis added) (citations omitted).

Appellant argues its policy does not cover the accident because there was no causal connection between the injury and the use of the camper for transportation purposes. We agree.

Many cases illustrate the requirement that the injury be caused by the use of a motor vehicle for transportation purposes. For example, in *Waldbillig v. State Farm Mutual Auto Insurance Co.*, 321 N.W.2d 49 (Minn.1982), an insured who was inspecting a backhoe, which was permanently mounted on a truck, injured his hand while attempting to start the backhoe's engine. The supreme court reversed a finding of coverage because the truck-backhoe tandem was not being used for transportation purposes at the time of the accident. *Id.* at 51–53.

In *Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116 (Minn.1981), the supreme court reversed a finding of coverage for a child's injuries sustained while playing with matches in the cab of a pickup truck. The child was left unattended in the truck prior to a trip downtown. The supreme court acknowledged that the truck was being used for transportation purposes, but held there was an insufficient causal connection between such use and

the injury; the truck was the mere situs of the injury, rather than an active accessory. *Id.* at 117.

This court relied on *Tlougan* in denying coverage in *St. Paul Fire and Marine Insurance Co. v. Sparrow*, 378 N.W.2d 12 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 23, 1986). The insured was loading a concession wagon that was hitched to a parked car. She was injured attempting to remove burning napkins from the wagon, when the flames ignited gas fumes. The concession wagon was insured as a "motor vehicle" under the no-fault act. We stated:

> Sparrow claims the fire in the concession wagon was a natural and reasonable incident and consequence of the use and maintenance of the vehicle.
>
> St. Paul argues the accident occurred out of the use of the trailer as a restaurant, and, therefore, the trailer was the mere situs of the injury.
>
> St. Paul is correct.

*Id.* at 16.

The importance of focusing on the requirement that the vehicle be used for transportation purposes at the time of the accident was emphasized by the supreme court in *Classified Insurance Corp. v. Vodinelich*, 368 N.W.2d 921 (Minn.1985). There, a woman accidentally killed her children while committing suicide by idling her car in the family garage, when carbon monoxide fumes seeped into the house. The supreme court reversed a finding of coverage for the children's deaths because the mother had not been using the car for transportation purposes. It stated:

> In previous decisions we have uniformly repeated that for coverage to exist, the vehicle must have been used "for transportation purposes." * * * Nonetheless, the court of appeals did not follow our prior language and substituted its own test—a covered use is one " 'which is reasonably consistent with the inherent nature of the vehicle.' "

*Id.* at 923 (citations omitted).

The supreme court has frequently explained that coverage is limited to injuries resulting from the use of motor vehicles as vehicles because no-fault automobile policies are designed to insure against risks associated with "motoring." *See, e.g., id.* at 923; *Waldbillig*, 321 N.W.2d at 51. In those cases (and others), the court relied on the following comment in the 1972 Uniform Motor Vehicle Accident Reparations Act:

> While "use" has a broader meaning than operating or driving a vehicle, the requirement that use of the motor vehicle be "as a motor vehicle" qualifies the term so that * * * the availability of basic reparation benefits are more nearly limited to activities whose costs should be allocated to motoring as part of an automobile insurance package.

Commissioner's Comments, Unif. Motor Veh. Acc. Reparations Act § 1, 14 U.L.A. 41, 55–56 (1980).

The comment goes on to state:

> For example, it has no application to an injury which occurs when a person slips and falls inside a travel trailer which has been parked at a camp site.

*Id.* at 56, *noted in Marklund v. Farm Bureau Mutual Insurance Co.*, 400 N.W.2d 337, 339 n. 5 (Minn.1987).

A straightforward application of the above authorities leads us to conclude the trial court erred in finding coverage. The camper was not being used for transportation purposes at the time of the accident. It had been unhitched and was being used as a temporary residence.

Respondent argues that the use of the camper for camping was reasonable and foreseeable, and the camper was more than the mere situs of the injury, but was an active accessory. We agree with those contentions, but do not agree that they are sufficient for coverage. They are considerations used to determine the larger issue: was there a causal connection "between the injury and the use of the vehicle for transportation purposes"? *Vodinelich*, 368 N.W.2d at 923 (citing *Tlougan*, 310 N.W.2d at 117).

In *Vodinelich* the supreme court specifically rejected our use of what was essentially a "reasonably foreseeable" test, and there the vehicle was undoubtedly an "ac-

tive accessory" to the accident. The accident here was no more a motoring accident than were the accidents in *Vodinelich, Tlougan* and *Sparrow,* or than the case "where a person slips and falls inside a travel trailer * * * parked at a camp site." 14 U.L.A. at 56.

Our decision is made more difficult, however, by cases where coverage was found largely because, as here, the person was injured by part of the vehicle itself. For example, in *North River,* the supreme court affirmed a finding of coverage where a person was injured in fall from a trailer attached to a parked pickup truck; he was combining on a farm and fell while attempting to remove a tarpaulin from atop the trailer. The court stated:

> [H]e was injured by a part of the vehicle itself which malfunctioned or when he alighted from the vehicle. In either case the trailer was being used as a motor vehicle within the purview of the Act.

346 N.W.2d at 114.

The *North River* opinion relies on *Galle v. Excalibur Insurance Co.,* 317 N.W.2d 368 (Minn.1982). In *Galle,* the court found coverage where a truck driver

> had finished his route and parked his truck at the rear of the loading dock. He went to the rear of the trailer intending to open the door * * *. As the door opened a cable broke, jamming the door and causing [him] to fall forward and injure himself.

*North River,* 346 N.W.2d at 114.

*Galle* denied coverage to another plaintiff, Standfield, who was injured while attempting to lift a heavy box inside a stationary trailer. *North River* explains:

> The decisive factor justifying a finding of coverage in *Standfield* and a denial of coverage in *Galle* was the involvement of the motor vehicle. Standfield was injured by part of the vehicle itself when the cable broke and the door struck him. On the other hand, the involvement of the vehicles in *Galle* was, in effect, fortuitous * * *.

346 N.W.2d at 114 (quoting Steenson, *Minnesota No-Fault Automobile Insurance* 35 (1982)).

We do not believe coverage can be found here based on *North River* and *Galle. Vodinelich* makes clear it is not enough that the vehicle itself cause the injury, but that it also must˜ be used for transportation purposes. Our case involves less of a causal link between the accident and the use of the vehicle as a vehicle than do *North River* and *Galle.* In those cases the vehicles were merely parked; even though they were not moving at the time of the accident, their character as vehicles had not changed. Here, on the other hand, the vehicle was more than parked—it had been unhitched for the weekend, and it was being used as a temporary residence.

Respondent argues it is irrelevant that the camper was unhitched, citing *Holzemer v. Millers' Mutual Insurance Co.,* 359 N.W.2d 291 (Minn.Ct.App.1984). In *Holzemer,* the insured was struck by a car, and we held he could receive underinsured motorist benefits under a no-fault policy covering his trailer, despite the fact it was unhitched at the time of the accident.

*Holzemer* has nothing to do with the issue in this case. There the insured's injury unquestionably arose out of the use of a motor vehicle as a vehicle—he was hit by a car—and so it was irrelevant that his trailer was unhitched at the time of the accident.

Finally, the Wiczeks rely on a Michigan case, *Koole v. Michigan Mutual Insurance Co.,* 126 Mich.App. 483, 337 N.W.2d 369 (1983). In *Koole,* the insured drove a pickup truck with an "attached camper." *Id.* 337 N.W.2d at 369. He parked the truck in a rest area and went to sleep in the camper. The next morning he was injured when he lit a match which ignited gas from the camper furnace pilot light. The court found a sufficient causal relationship between the injury and the use of a motor vehicle as a vehicle.

*Koole* can be distinguished. There the camper was still attached at the time of the accident. The driver apparently was not camping, but had merely stopped driving for the night. It thus is more of a "motor-

ing" case involving a parked car than a "camping" case, as here.

Also, to the extent *Koole* cannot be distinguished, it does not reflect the law in Minnesota. For example, it suggests that coverage can be found where the motor vehicle is not being used for transportation. *Id.* at 371. Cases involving campers may be of the type that, as *Vodinelich* states, "our existing language will prove insufficient to meet," 368 N.W.2d at 923, but that opinion makes clear only the supreme court can formulate a new test in this area.

### DECISION

The trial court erred in finding coverage because respondent's death did not arise out of the use of a motor vehicle as a vehicle.

Reversed.