Robert A. STRAND, Appellant,

v.

ILLINOIS FARMERS INSURANCE COMPANY, Respondent.

No. C3–88–298.

Court of Appeals of Minnesota.

Sept. 20, 1988.

---

Anthony U. Wacker, Parker & Parker, Minneapolis, for appellant.

Eric R. Magnuson, William John Egan, Rider, Bennett, Egan & Arundell, Minneapolis, for respondent.

Heard, considered and decided by KALITOWSKI, and NIERENGARTEN and HACHEY,* JJ.

## OPINION

NIERENGARTEN, Judge.

Robert Strand was injured in a fire on September 5, 1986. He submitted a claim to his no-fault insurance carrier, Illinois Farmers Insurance Company (Farmers). Farmers denied the claim, asserting that Strand's injuries did not arise out of the use or maintenance of an automobile. Strand sued Farmers. The trial court granted Strand's motion for summary judgment on coverage but did not set out the amount of benefits awarded. The parties settled all their disputes over benefits except Strand's claim that he was entitled to medical expenses which had been paid by his health insurer, Physicians Health Plan (PHP). The trial court denied Strand's claim and he appeals. Farmers filed a no-

tice of review on the court's determination that Strand's injuries arose out of the use and maintenance of a motor vehicle. We affirm.

## FACTS

On September 4, 1985, Strand put gas in his car and parked it in the garage attached to his residence. The next morning Strand detected an odor but did not investigate. As he was about to leave for work, his housemate told him the car was leaking gasoline. Strand looked under the car and saw a puddle of gasoline. When his housemate activated the garage door opener fumes from the puddle of gasoline under the car were ignited, apparently by a gas water heater in the garage. As a result of the fire, Strand suffered injuries.

Strand's health insurance carrier, PHP, paid $18,810.83 to cover Strand's medical expenses and then settled PHP's subrogation claim against Farmers in full for $9,355.42. Strand was not a party to this agreement. Strand claims he is entitled to the balance from Farmers. The trial court held that Strand was not entitled to reimbursement for medical expenses for which he was not liable and suffered no out-of-pocket loss.

## ISSUES

1. Did respondent file a timely notice review on the issue of whether appellant's injuries arose out of the use and maintenance of a motor vehicle?

2. Did appellant's injuries arise out of the use and maintenance of a motor vehicle?

3. When the no-fault carrier settles a claim directly with a subrogated health insurer, is the insured entitled to recover the difference between the amount claimed by the health insurer and the amount paid in settlement?

## ANALYSIS

### I.

On January 30, 1987, summary judgment was entered in Strand's favor holding his

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

injuries arose out of the use and maintenance of an automobile and as such were covered under his no-fault insurance policy. He also received penalty interest. Farmers did not appeal from this judgment. The 1987 judgment did not specify an amount to be paid but only that Strand was entitled to benefits. The parties then disputed the benefits payable and Strand moved to amend his complaint to ask for specific monetary amounts. The trial court granted the motion and ordered trial set to determine damages. Following a partial settlement on all damages except medical expenses, the trial court granted Farmer's summary judgment motion by order dated December 8, 1987, and entered January 4, 1988. This judgment denied Strand's request for medical expenses not paid to PHP and it is from this judgment he appealed, and Farmers filed their notice of review.

■ An appeal must be taken within 90 days of entry of judgment. Minn.R.Civ. App.P. 104.01. An appeal must be taken from a final judgment. *Emporium of Jazz v. City of Mendota,* 374 N.W.2d 825, 827 (Minn.Ct.App.1985). Strand argues that the 1987 judgment was a final judgment and that the time for appeal has expired. He is wrong. The initial 1987 summary judgment did not settle all the disputes between the parties. While the judgment required Farmers to pay benefits, the amount to be paid was disputed. When there are multiple claims the court can enter final judgment as to less than all the claims only when it makes an express determination that there is no reason for delay and expressly directs entry of judgment. Minn.R.Civ.P. 54.02; *Emporium of Jazz,* 374 N.W.2d at 827. The court made no express finding that there was no reason for delay.

> Adjudication of liability, without determination of damages, is not an adjudication of even one entire claim. "The determination of liability is but one step to securing a money judgment. There cannot be a final judgment until both liability and the amount of damages are judicially determined." *Aetna Casualty & Surety Co. v. Jeppesen & Co.,* 440 F.Supp. 394, 403 (D.Nev.1977) (footnote omitted).

Both the federal rule and Minnesota rule on summary judgment provide that any partial summary judgment on the issue of liability alone is interlocutory and, therefore, not appealable: "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Minn.R.Civ.P. 56.03; Fed.R.Civ.P. 56(c). *In re the Commodore Hotel Fire and Explosion Case,* 318 N.W.2d 244, 246 (Minn. 1982).

In addition, if the judgment entered in 1987 had been a final judgment, the court would not have allowed Strand to amend his complaint. The 1987 judgment was essentially a partial summary judgment which functioned as a declaratory judgment that Farmers was liable for benefits. The amount of these payments was not established until the trial court's 1988 judgment. The purpose of requiring appeals to be made from final judgments is to avoid multiple appeals. *Emporium of Jazz,* 374 N.W.2d at 828. Farmers correctly waited until all issues were determined and is timely in filing its notice of review in response to Strand's appeal.

## II.

■ Farmers maintains that Strand's injuries did not arise out of the maintenance or use of a motor vehicle and consequently Strand is not entitled to benefits. Under the Minnesota No–Fault Automobile Insurance Act basic economic loss benefits are payable for injury "arising out of the maintenance or use" of a motor vehicle. Minn. Stat. § 65B.44, subd. 1 (1984).

### 1. Causation

■ The vehicle must be an "active accessory" in causing the injury. *Continental Western Insurance Co. v. Klug,* 415 N.W.2d 876, 878 (Minn.1987) (citing *Holm v. Mutual Service Casualty Insurance Co.,* 261 N.W.2d 598, 603 (Minn.1977)).

> It is enough if "the injury is a natural and reasonable incident or consequence of the use of the vehicle."

*Tlougan v. Auto–Owners Insurance Co.,* 310 N.W.2d 116, 117 (Minn.1981) (quoting *Haagenson v. National Farmers Union Property and Casualty Co.,* 277 N.W.2d 648, 652 (Minn.1979)).

■ Here, the car was an active accessory to the injury. The fire was caused by the ignition of fumes from gasoline leaking from the car because of some defect. Gasoline is necessary to the use and maintenance of an automobile. The fact that the car was parked and not moving at the time of the accident does not change its character as a vehicle used for transportation. *Cf. Wiczek v. Shelby Mutual Insurance Co.,* 416 N.W.2d 768, 771 (Minn.Ct.App. 1987) (a camper unhooked and parked for the weekend was being used as a temporary residence, rather than a motor vehicle).

### 2. Independent Act

■ Next, we must determine if an "act of independent significance" occurred to break the causal link between the vehicle and the injuries. *Klug,* 415 N.W.2d at 878. Farmers argues the hot water heater was the cause of the accident. However, the stipulated facts indicate the water heater was functioning normally. The inescapable conclusion is that the leaking gasoline and fumes caused the accident. There was no intervening independent act.

### 3. Use

■ Finally, we must determine whether the injuries resulted from use of an automobile for transportation purposes. *Klug,* 415 N.W.2d at 878. *Cf. Classified Insurance Corp. v. Vodinelich,* 368 N.W.2d 921 (Minn.1985) (no coverage found when vehicle used to commit suicide by carbon monoxide poisoning).

*Petrick v. Transport Insurance Co.,* 343 N.W.2d 876 (Minn.Ct.App.1984) involved a trucker who was injured when he slipped on oil which was on the truck floor. There we held:

> The injury occurred as a result of Petrick slipping on the oil spill in the vehicle. Although the source of the oil is unknown, *its presence is undoubtedly attributable to the use of the truck for transportation of goods on this or an earlier occasion.* This vehicle was more than a mere situs of the injury. The condition of the vehicle itself caused Petrick to slip and fall. This condition makes the vehicle an active accessory to the injury.

*Id.* at 879 (emphasis added). In the present case, the gasoline is clearly attributable to the use of the car for transportation purposes. *See Jorgensen v. Auto–Owners Insurance Co.,* 360 N.W.2d 397 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. Apr. 12, 1985) (in this case, the car provided the ignition).

### III.

When Farmers denied coverage, Strand's health insurer, Physician's Health Plan (PHP), paid Strand's medical expenses of $18,710.83 and then settled its subrogation claim against Farmers for only $9,355.42. Strand argues that Farmers is benefiting from his additional insurance and therefore he is entitled to the balance of the medical expenses not paid to PHP by Farmers.

■ Except for worker's compensation benefits, basic economic loss benefits provided by a no-fault carrier are primary with respect to injuries arising out of the maintenance and use of a motor vehicle. Minn.Stat. § 65B.61, subd. 1 (1984). In addition,

> Any legal entity, other than a reparation obligor obligated to pay benefits under a plan of reparation security or an insurer or employer obligated to pay benefits under a workers' compensation law, may coordinate any benefits it is obligated to pay for loss incurred as the result of injury arising out of the maintenance or use of a motor vehicle with basic economic loss benefits.

*Id.,* subd. 3. If Strand's injuries arose out of the use and maintenance of a motor vehicle, then the no-fault carrier (Farmers) was responsible for Strand's medical expenses up to $20,000. *See* Minn.Stat. § 65B.44, subd. 1(a). When Farmers denied Strand's claim, PHP paid, and then settled with Farmers for half the amount it

expended under a subrogation rather than a combination of benefits claim. Strand wants the other half, claiming Farmers, as reparation obligor, did not have the benefit of coordination. *See Wallace v. Tri–State Insurance Co.*, 302 N.W.2d 337, 339 (Minn. 1980). Strand claims he was entitled to whatever benefits Farmers did not pay PHP even if it results in a windfall. *See Id.* at 339–40.

However,

[t]he legislature * * * has chosen to make the coordination of benefits provision permissive rather than mandatory, and must have anticipated that some insurers would elect not to coordinate benefits.

*Id.* at 340 (citations omitted).

 This is not a case of coordination but rather one of subrogation. PHP's payment gave it equitable and contractual rights to subrogation. *See Flanery v. Total Tree, Inc.*, 332 N.W.2d 642 (Minn.1983). PHP gave the parties notice of its intent to intervene and assert its right of *subrogation* pursuant to the PHP contract, after the trial court granted summary judgment declaring Farmers liable for no-fault benefits. When PHP chose that route of settlement, Strand was left without an interest in the remaining funds.

### DECISION

Although Farmers' notice of review was timely raised, we affirm the trial court's determination that Robert Strand's injuries arose out of the use and maintenance of a motor vehicle. Because PHP paid Strand's medical expenses, it has subrogation rights against Farmers, the primary insurer. Strand is not entitled to surplus caused by PHP's decision to settle for an amount less than the claim.

AFFIRMED.