**Thomas KEMMERER, Respondent,**

v.

**STATE FARM INSURANCE COMPANIES, Appellant.**

No. C5–93–1578.

Court of Appeals of Minnesota.

March 29, 1994.

Review Denied June 2, 1994.

William M. Hart, Joseph W.E. Schmitt, Meagher & Geer, Minneapolis, for appellant.

Debra J. Teuchert, Apple Valley, for respondent.

Considered and decided by SHORT, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

KLAPHAKE, Judge.

State Farm Mutual Automobile Insurance Company appeals from a judgment, contending the district court erred in vacating a default judgment against respondent Thomas Kemmerer and further challenging the district court's determination that Kemmerer's injuries arose out of the maintenance or use of a motor vehicle under Minn.Stat. § 65B.43, subd. 3 (1988). We affirm.

## FACTS

On Memorial Day weekend 1989, respondent Thomas Kemmerer and a group of friends went camping near Bayfield, Wisconsin. Before leaving the Twin Cities on Friday, May 27, 1989, Dave Jonk and another man loaded a kayak onto Jonk's pickup truck, securing it to the pickup topper with an elasticized nylon rope. Kemmerer drove separately. That evening, they arrived at their campsite, and Jonk and the other man untied the back of the kayak to unload a tent.

The next morning, the group unloaded motorcycles from Kemmerer's truck and went motorcrossing until about 10:30 a.m. They then returned to the campsite, reloaded all of their recreational and camping equipment, drove into Bayfield, and met two more friends.

The group drove to a beach, unloaded their mountain bikes, and went riding. One of the men used the kayak, instead. After about four hours, they returned to the trucks and the group sat on the beach for several hours drinking beer. The record does not reveal when or by whom the kayak was reloaded onto Jonk's truck. At about 8:30 p.m., before driving to the next campsite, Kemmerer decided to have another beer. Kemmerer turned the handle of Jonk's topper door and pulled the door open about two inches, putting pressure on the nylon rope. The rope snapped, hitting Kemmerer in the left eye.

Kemmerer sued appellant State Farm Mutual Automobile Insurance Company (State Farm) for no-fault insurance benefits. The State Farm policy provides no-fault coverage for injuries "caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle." State Farm refused to pay economic loss benefits, claiming Kemmerer's injury did not arise out of the use or maintenance of a motor vehicle and therefore was not covered. The district court disagreed and granted partial summary judgment to Kemmerer, concluding that Kemmerer's injury arose out of the use or maintenance of a motor vehicle.

Thereafter, the parties conducted discovery on Kemmerer's damages. Despite numerous requests, Kemmerer's attorney, Cathleen Bang, did not provide State Farm with medical releases. In August 1991, Bang scheduled a motion in an unrelated case. Without notifying the court, she later substituted a summary judgment motion in the Kemmerer case. At the hearing, the court ordered sanctions of $75 in court costs and $100 in attorney fees for Bang's misuse of the scheduling system. Bang did not inform Kemmerer of this order, nor did she pay the sanctions.

After several months, State Farm informed the court of Bang's noncompliance and requested dismissal of the action. In February 1992, without a hearing, the district court ordered Kemmerer's action dismissed with prejudice for failure to comply with the previous order. Judgment for State Farm was entered March 17, 1992.

Thereafter, Kemmerer retained a new attorney and, on June 4, 1992, moved to vacate the judgment. Kemmerer claimed Bang's noncompliance was a result of clinical depression. At the hearing on the motion, the court instructed Kemmerer to provide a medical report from a competent, licensed medical doctor or psychiatrist, documenting Bang's condition and inability to function as an attorney.

After receiving the report of a neurologist who examined Bang in March 1992, the court vacated the default judgment. The court noted that to enforce the judgment would penalize Kemmerer because Bang lacked malpractice insurance. Additionally, Kemmerer agreed to waive the statutory 15% penalty interest that would apply to any damages award for the period between August 1, 1991, and September 15, 1992.

Before trial, the parties stipulated to damages of $8,907.86. The sole issue tried was Kemmerer's entitlement to future wage losses of $5,070.37. The court found that Kemmerer was entitled to the future wage losses. Judgment was entered on May 7, 1993, and State Farm appeals.

## ISSUES

I. Did the district court abuse its discretion in vacating the default judgment?

II. Did Kemmerer's injury arise out of the use or maintenance of a motor vehicle?

## ANALYSIS

### I. *Vacating Judgment*

■ To obtain relief from a default judgment, the moving party must show the following four factors:

(1) a reasonable case on the merits;

(2) a reasonable excuse for the action or conduct causing the dismissal;

(3) due diligence after notice of entry of judgment; and

(4) no substantial prejudice to the opposing party.

*Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 30, 53 N.W.2d 454, 455–56 (1952). Generally, courts favor a liberal application of the *Hinz* test to further the policy of resolving cases on their merits. *Taylor v. Steinke*, 295 Minn. 244, 246, 203 N.W.2d 859, 860 (1973). We will not reverse the decision to vacate a judgment unless the district court abused its discretion. *Hinz*, 237 Minn. at 31, 53 N.W.2d at 457.

■ State Farm concedes that, for purposes of the motion for relief from the judgment, Kemmerer presented a reasonable claim on the merits. Here, the neurologist's report clearly supports the conclusion that attorney Bang suffered from and was treated for serious bouts of depression while representing Kemmerer. The district court could reasonably infer from the report that attorney Bang's illness affected her representation of Kemmerer and that the illness constituted a reasonable excuse for her neglect. *See Haisch v. Coulter*, 145 Minn. 115, 116, 176 N.W. 155 (1920) (attorney's failure to serve answer because of pressures at office was reasonable excuse). Moreover, attorney Bang neither informed Kemmerer of the sanctions nor of her failure to pay them. Kemmerer only learned of the sanctions after the entry of the judgment of dismissal. Thus, Kemmerer was not personally negligent. *See Finden v. Klaas*, 268 Minn. 268, 273, 128 N.W.2d 748, 750–51 (1964) (where client is unaware of attorney's neglect and is not personally negligent, courts will grant relief from judgment if *Hinz* test met).

Additionally, Kemmerer moved to vacate within three months of receiving notice of the March 17, 1992 judgment. Under these circumstances, the district court could reasonably conclude that Kemmerer acted with due diligence. *See Sommers v. Thomas*, 251 Minn. 461, 466–67, 88 N.W.2d 191, 195–96 (1958) ("reasonable time" is determined on case-by-case basis).

Finally, State Farm claims it suffered substantial prejudice from Kemmerer's inaction. Essentially, State Farm claims prejudice from the inconvenience of closing and reopening its file. We do not believe this delay and inconvenience amounts to substantial prejudice. *See Riemer v. Zahn*, 420 N.W.2d 659, 662 (Minn.App.1988) (delay and expense do not constitute substantial prejudice because movant can be taxed with costs and disbursements). Kemmerer paid the sanctions and agreed to waive a substantial portion of a statutorily imposed interest penalty. Accordingly, we observe no abuse of discretion in the decision to vacate the default judgment. *See Hinz*, 237 Minn. at 31, 53 N.W.2d at 457.

### II. *Use or Maintenance of Vehicle*

■ The district court granted partial summary judgment for Kemmerer, conclud-

ing that his injury arose out of the "maintenance or use of a motor vehicle" within the meaning of the no-fault automobile insurance act, Minn.Stat. §§ 65B.41–.71 (1988) (hereinafter "no-fault act"). In an appeal from summary judgment, this court determines whether material fact disputes exist for trial and whether the district court correctly applied the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). Whether an injury arose out of the maintenance or use of a motor vehicle is a question of law. *North River Ins. Co. v. Dairyland Ins. Co.*, 346 N.W.2d 109, 113 n. 2 (Minn.1984). This court need not defer to the district court's conclusions on matters of law. *State Farm Fire & Casualty Co. v. Strope*, 481 N.W.2d 853, 855 (Minn.App.1992), *pet. for rev. denied* (Minn. May 15, 1992).

Under the no-fault act, an insured may recover basic economic loss benefits for injuries "arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (1988). The phrase "maintenance or use of a motor vehicle" is defined as:

> maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. Maintenance or use of a motor vehicle does not include * * * (2) conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it.

Minn.Stat. § 65B.43, subd. 3 (1988). Here, neither party contests the district court's determination that Kemmerer was "unloading" the truck and that he was occupying or entering the truck at the time of the accident. Therefore, the sole issue is whether the injury arose out of the maintenance or use of the motor vehicle.

The supreme court has formulated a three-factor test to determine whether an injury arose out of the maintenance or use of a motor vehicle. *Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876, 877–78 (Minn.1987).

1. The court must consider the extent of the causation between the vehicle and the injury.

2. If causation is present, the court then considers whether an act of independent significance broke the causal chain.

3. Finally, if no intervening act breaks the causal chain, the court must determine whether the vehicle was being used for transportation purposes at the time of the injury.

*Id.* at 878. If the vehicle was being used for transportation purposes, no-fault coverage applies; if not, there is no coverage. *Id.* Ultimately, resolution of this question depends upon the facts of each case. *Id.* at 877–78; *Hanson v. Grinnell Mut. Reinsurance Co.*, 422 N.W.2d 288, 289 (Minn.App. 1988), *pet. for rev. denied* (Minn. June 29, 1988).

State Farm argues the pickup was neither an active accessory to the injury nor used for transportation purposes at the time of the accident. State Farm does not claim that an act of independent significance broke the causal chain.

*Active Accessory to Injury*

Under the causation analysis in no-fault cases, the motor vehicle must be an "active accessory" to the injury. *North River*, 346 N.W.2d at 114.

> For an injury to arise out of the use or maintenance of a motor vehicle, "there must be some causal connection between the injury and the use of the vehicle for transportation purposes." The requisite connection between use and injury is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." The connection is established if "the injury is a natural and reasonable incident or consequence of the use of the vehicle." The vehicle itself must be an active accessory to the injury sustained.

*Id.* (citations omitted). "Active accessory" means that "the accident happened because the vehicle's use was actively connected with the injury." *Fire & Casualty Ins. Co. v. Illinois Farmers Ins. Co.*, 352 N.W.2d 798, 799 (Minn.App.1984).

In this case, the rope securing the kayak to the motor vehicle injured Kemmerer when it broke. Kemmerer testified in his deposi-

tion that the pressure of the topper door caused the rope to snap. Thus, the truck was an "active accessory" in causing the injury. *See Galle v. Excalibur Ins. Co.*, 317 N.W.2d 368, 369–70 (Minn.1982) (truck driver covered when cable broke, jammed trailer, and caused him to fall); *Jorgensen v. Auto-Owners Ins. Co.*, 360 N.W.2d 397, 400 (Minn. App.1985) (defective trunk wire ignited gas fumes), *pet. for rev. denied* (Minn. Apr. 12, 1985). Because the truck was an active accessory, we conclude Kemmerer has established an adequate causal link between the truck and the injury for no-fault purposes.

*Use for Transportation Purposes*

 Regardless of the causal link between the injury and the vehicle, coverage applies only where the vehicle is being "used for transportation purposes." *Klug*, 415 N.W.2d at 878. The policy behind this requirement is to restrict no-fault coverage to risks associated with motoring. *Classified Ins. Corp. v. Vodinelich*, 368 N.W.2d 921, 923 (Minn.1985). In this context, "use" is not limited to merely operating or driving a motor vehicle. *See Wiczek v. Shelby Mut. Ins. Co.*, 416 N.W.2d 768, 770 (Minn.App.1987). "Use" is, however, limited to those activities whose costs should be attributed to motoring. *Id.* For example, the supreme court refused to apply no-fault coverage where a woman used a car parked in a garage to commit suicide by carbon monoxide poisoning and the fumes accidentally killed children sleeping in the adjacent house, holding the car was not being used for transportation purposes. *Vodinelich*, 368 N.W.2d at 923; *see also Wiczek*, 416 N.W.2d at 770–71 (no coverage where heater permanently installed in trailer malfunctioned and killed sleeping occupant because trailer was unhitched, parked for weekend, and being used as temporary residence); *St. Paul Fire & Marine Ins. Co. v. Sparrow*, 378 N.W.2d 12, 16 (Minn.App. 1985) (no coverage for injury occurring inside concession stand trailer hooked to truck because injury arose out of use of trailer as restaurant), *pet. for rev. denied* (Minn. Jan. 23, 1986).

State Farm argues that Kemmerer's injury occurred when he was using the truck for "storage," rather than transportation pur-

poses. *Cf. Wiczek*, 416 N.W.2d at 771; *Sparrow*, 378 N.W.2d at 15–16. We conclude that the nature of the use was for transportation. *See Wiczek*, 416 N.W.2d at 771–72. First, Jonk drove his truck to the beach where the group engaged in various recreational activities. Second, the group did not intend to camp at the beach. Third, at the time of Kemmerer's injury, the group had loaded all of their recreational and camping equipment into their vehicles and was planning to drive to another campsite. Because these facts show that the truck was being used for transportation purposes when Kemmerer was injured, he is entitled to no-fault coverage.

## DECISION

The district court did not abuse its discretion in vacating the default judgment where Kemmerer met the *Hinz* test. The district court properly granted summary judgment to Kemmerer where his injury arose out of the use of a motor vehicle.

**Affirmed.**