**NORWEST BANK MINNESOTA, N.A., as personal representative of the Estates of Lisle Vickerman and Jean M. Vickerman, and Jessa Vickerman, Respondents,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

No. C4–97–2293.

Court of Appeals of Minnesota.

June 23, 1998.

Review Granted July 30, 1998.

## OPINION

SHUMAKER, Judge.

The district court granted summary judgment in favor of respondents, ruling as a matter of law that decedents' carbon monoxide deaths arose out of the maintenance or use of a motor vehicle under the Minnesota no-fault automobile insurance act. We reverse.

## FACTS

Upon returning home from dinner on April 16, 1996, Lisle and Jean Vickerman parked their car in their attached garage and went inside the house. Lisle went to bed immediately and Jean followed after watching television. They had left the car engine running, and they died of carbon monoxide poisoning several hours later. Appellant State Farm was their automobile insurer.

Respondent Norwest Bank Minnesota, N.A., as personal representative of the decedents' estates, filed a claim against appellant for basic economic loss benefits under Minn. Stat. § 65B.44 (1996) (no-fault automobile insurance) on the ground that the deaths resulted from the maintenance or use of the insured motor vehicle. Appellant denied the claim, contending that, at the time of their deaths, the decedents were not using their car for transportation purposes, as required in order to qualify for insurance benefits.

## ISSUE

Did the district court err in ruling as a matter of law that the decedents' deaths arose out of the use of their motor vehicle for transportation purposes?

## ANALYSIS

On appeal from a summary judgment, this court must determine whether any genuine issue of material fact exists and whether the district court erred in its application of the law. *Wartnick v. Moss and Barnett*, 490 N.W.2d 108, 112 (Minn.1992). The material facts are not in dispute; the parties agree that the carbon monoxide from the idling car

Ronald L. Snelling, Snelling, Christensen & Laue, P.A., Minneapolis, for respondents.

William M. Hart, Richard L. Pemberton, Jr., and R. Gregory Stephens, Meagher & Geer, Minneapolis, for appellant.

Considered and decided by PETERSON, P.J., and SHUMAKER, J., and FOLEY, J.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

engine caused the decedents' deaths while they were in bed in their house. They disagree as to whether the deaths resulted from the "maintenance or use of a motor vehicle." Minn.Stat. § 65B.43, subd. 3 (1996). That is a question of law for this court to answer. *Kemmerer v. State Farm Ins. Companies,* 513 N.W.2d 838, 842 (Minn.App.1994), *pet. for rev. denied* (Minn. June 2, 1994).

The Minnesota no-fault automobile insurance act provides for reimbursement of various losses "suffered through injury arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (1996). "Injury" includes death. Minn.Stat. § 65B.43, subd. 11 (1996). The act defines "maintenance or use of a motor vehicle" as

maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it.

Minn.Stat. § 65B.43, subd. 3. The statutory definition is not comprehensive, and the "legal issue of whether an accident arises out of the use or maintenance of an automobile is a recurring question which defies a simple test." *Continental Western Ins. Co. v. Klug,* 415 N.W.2d 876, 877 (Minn.1987). Each case must turn primarily on the facts presented. *Associated Indep. Dealers, Inc. v. Mutual Serv. Ins. Cos.,* 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975). *Klug* sets forth three general factors to be applied in resolving the maintenance or use issue: (1) the extent of the causation between the vehicle and the injury; (2) whether an act of independent significance broke the causal link between the use of the vehicle and the injury; and (3) if there was an unbroken causal link between use and injury, the type of use to which the vehicle was being put when the injury occurred. 415 N.W.2d at 877.

■ The first two factors are intended to reveal whether or not the vehicle was an "active accessory" to the injury. *North River Ins. Co. v. Dairyland Ins. Co.,* 346 N.W.2d 109, 114 (Minn.1984). Only if the vehicle was an active accessory to the injury will no-fault insurance coverage pertain. *Fire & Casualty Ins. Co. v. Illinois Farmers Ins. Co.,* 352 N.W.2d 798, 799 (Minn.App.1984). The "active accessory" analysis focuses entirely on

causation. It is undisputed that the carbon monoxide from the car caused the deaths and that there was no intervening or superseding causal event.

■ The third factor, however, is in dispute. That factor focuses on the use of the vehicle at the time of the injury. "If the vehicle was being used for transportation purposes, no-fault coverage applies; if not, there is no coverage." *Kemmerer,* 513 N.W.2d at 842. "The policy behind this requirement is to restrict no-fault coverage to risks associated with motoring." *Id.* at 843. " 'Use' is, however, limited to those activities whose costs should be attributed to motoring." *Id.* at 843. The cases distinguish "transportation purposes" from other uses of a motor vehicle. Where a vehicle is merely the situs of the injury and is not involved in a transportation function that results in the injury, there is no coverage. *Wiczek v. Shelby Mut. Ins. Co.,* 416 N.W.2d 768, 770 (Minn. App.1987) (where decedent died of carbon monoxide poisoning from a defective heater in an insured travel trailer in which he was sleeping, the vehicle was being used as a temporary residence rather than for transportation). *Engeldinger v. State Automobile and Casualty Underwriters,* 306 Minn. 202, 208, 236 N.W.2d 596, 600 (1975) (no coverage where intoxicated person froze to death while sleeping in a parked car because the vehicle was the mere situs of the death).

■ "The mere fact that an accident occurred while the injured party was on, in or near a statutorily defined motor vehicle, of itself is not dispositive." *Waldbillig v. State Farm Mut. Auto. Ins. Co.,* 321 N.W.2d 49, 51 (Minn.1982). For the third factor, *Wiczek* emphasizes the critical "importance of focusing on the requirement that the vehicle be used for transportation purposes at the time of the accident * * * ." 416 N.W.2d at 770. Thus, in *Classified Ins. Corp. v. Vodinelich,* 368 N.W.2d 921, 923 (Minn.1985), the supreme court affirmed the district court's denial of coverage for accidental carbon monoxide poisoning deaths of children in a house when their mother committed suicide by idling the engine of her car parked in an attached garage. Because the children's deaths did not arise out of the use of the car

for transportation purposes, there was no coverage. At the time of the children's deaths, the car was being used solely as an instrumentality of suicide. In contrast, *Kemmerer* involved a pickup truck that was driven from one recreational area to another so the occupants could do motorcycling and kayaking. 513 N.W.2d at 842. The kayak was fastened by an elasticized rope to a topper on the truck. During a temporary stop at one of the sites, an occupant opened the topper door and caused the rope to snap and hit the plaintiff in the eye. The court of appeals rejected the argument that the vehicle was being used for storage, noting that

> [a]t the time of Kemmerer's injury, the group had loaded all of their recreational and camping equipment into their vehicles and was planning to drive to another campsite. Because these facts show that the truck was being used for transportation purposes when Kemmerer was injured, he is entitled to no-fault coverage.

*Id.* at 843.

In this case, the decedents had finished their transportation use of their car and had gone to bed for the night. Since, at the time of their tragic deaths, decedents were not using the car for transportation purposes, they cannot satisfy the third of the three factors and are not entitled to insurance coverage.

Among the cases respondents rely on are *Jorgensen by Jorgensen v. Auto–Owners Ins. Co.*, 360 N.W.2d 397, 400 (Minn.App.1985), and *Strand v. Illinois Farmers Ins. Co.*, 429 N.W.2d 266, 270 (Minn.App.1988).[1] The former case, decided prior to the *Vodinelich* and *Klug* decisions, rests solely on a general causation determination. This court found it sufficient that there existed a causal connection between the injury and *some* use of the vehicle as a motor vehicle (storage of gasoline in the trunk). *Jorgensen*, 360 N.W.2d at

400. The post-*Klug* requirement, however, is that there be a causal connection between the injury and a *transportation* use of the vehicle. *Klug*, 415 N.W.2d at 877; *Kemmerer*, 513 N.W.2d at 842.

*Strand* is distinguishable because it did involve a transportation use of the vehicle. Strand parked his car overnight in his garage and it leaked gasoline. He was about to leave for work in his car when his housemate activated the garage door opener and fumes from the spilled gasoline were ignited by a gas water heater in the garage. Preparing immediately to drive his car, Strand was engaged in a transportation use and was covered under the no-fault act. *Strand*, 429 N.W.2d at 270.

## DECISION

Once the decedents had parked their car and gone to bed for the night, they had ceased to use the car for transportation purposes. Although there was an unbroken causal link between the vehicle and the deaths, the vehicle was not being used for transportation purposes at the time of the deaths. The district court erred in holding otherwise.

**Reversed.**

---

1. The parties also discussed the unpublished cases of *Opay v. Metropolitan Property and Cas. Ins. Co.*, No. C8–95–11, 1995 WL 407437 (Minn. App. July 11, 1995), and *Shea v. Dairyland Ins. Co.*, No. C1–91–2450, 1992 WL 122651 (Minn. App. June 9, 1992). The district court relied on *Shea*. In both cases, individuals died in motor vehicles inside garages as a result of carbon monoxide from running engines. Both cases focused on the question of whether the transportation use had ended. *Opay* held that it had and *Shea* held merely that there was no evidence that the transportation purpose had ended. Because the respective drivers died while still in the vehicles, those cases, in addition to lacking precedential effect, are distinguishable from this case as to the situs of the deaths.