**Barbara E. PERRY, Plaintiff,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Defendant.**

**No. CIVIL 4–77–430.**

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 8, 1980.

Leo F. Feeney and Maury S. Landsman, Robins, Davis & Lyons, St. Paul, Minn., for plaintiff.

Mark C. Brennan and Laura S. Underkuffler, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This is an action by Barbara E. Perry, attempting to recover survivor's economic loss benefits and death indemnity benefits under an automobile insurance policy issued by defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") to Norman Perry, plaintiff's deceased husband.

On the evening of October 6, 1976, Norman Perry and his two sons were engaged in moving an antique car, a 1931 Model A Ford, from their former residence in northeast Minneapolis to their new home in Elko, Minnesota. The Model A was an inoperable vehicle, having a cracked cylinder head and a dead battery. Its license plates had expired and it was not covered by insurance.

Perry and his sons attached the antique to Perry's 1973 Ford van with a tow chain. The van was insured by defendant State Farm. For the purpose of moving the antique car, Duane Perry drove the van, Timothy Perry was in the passenger seat of the van, and Norman Perry was in the driver's seat of the antique car to steer and brake the Model A.

On Scott County Road 23 an officer of the police department of Prior Lake, Minnesota pulled over the van and antique car. Apparently the officer desired to investigate the reason for the expired license plate on the Model A. Subsequent to the stop, the van's lights remained on, its motor was running, and about half of the van's body remained on the roadway.

The police officer exited his squad car and approached the antique car. He used his flashlight to observe the interior of the Model A and tapped on the window of the car to indicate to Perry that he should get out of the automobile. While Perry was in the process of alighting from the car, the officer fatally shot Perry in the chest.

Barbara E. Perry subsequently filed a claim for certain benefits under her husband's policy with State Farm. The facts of the filing and State Farm's refusal to pay benefits will be discussed below. On November 12, 1977, the plaintiff, for the consideration of $295,000, released the police officer, the City of Prior Lake, and various officials of the city from "any and all causes of action" resulting from the death of Norman Perry which could be brought by the plaintiff or by other heirs of the decedent.

The instant lawsuit was filed after the settlement and release. Plaintiff demanded a jury trial. Defendant contended that all issues in the case were for the court, not for the jury. After conferences in chambers, plaintiff agreed to submit one issue to the jury: whether Norman Perry was "alighting from" the antique car when he was shot. The jury answered the ques-

tion in the affirmative.[1] Defendant conceded prior to the verdict that if Perry was "alighting from" the antique car defendant would be obliged to pay death indemnity benefits (pursuant to the section of the policy identified as "Coverage S").

The remaining question is whether defendant is liable to plaintiff for the survivor's economic loss benefits. The relevant portion of the insurance policy, "6820G Personal Injury Protection (Coverage P)," provides that State Farm will pay benefits

> with respect to bodily injury sustained by an eligible injured person caused by accident and arising out of the ownership, maintenance or use, including loading and unloading, of a motor vehicle as a vehicle.

Coverage P is provided in accordance with the Minnesota No-Fault Automobile Insurance Act, Minn.Stat. §§ 65B.42, 65B.43 and 65B.44.

In denying coverage, defendant makes three legal arguments: 1) Norman Perry's death did not arise out of the use of the insured 1973 Ford van as a vehicle. 2) The circumstances surrounding Perry's death bring the accident within an exclusion barring payments when injuries arise out of the use of a motor vehicle owned by an insured and which is not an insured motor vehicle. 3) Plaintiff's settlement with the City of Prior Lake, the police officer, and Prior Lake officials prejudiced defendant's subrogation rights and bars this action. Each of these arguments will be discussed, *seriatim*.[2]

### I.

The initial issue is whether Norman Perry's death arose out of the ownership, maintenance, or use of the 1973 Ford van.

The Minnesota Supreme Court has held that a causal relationship or connection must exist between an injury and the use of an insured motor vehicle. However, the "relationship need not be a proximate cause in the legal sense, it being sufficient that the injury is a natural and reasonable incident or consequence of the use of the vehicle." *Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648, 652 (Minn.1979). *See Associated Independent Dealers v. Mutual Service Insurance*, 304 Minn. 179, 181, 229 N.W.2d 516, 518 (1975). The determination as to whether or not a sufficient causal connection exists necessarily turns on the facts of the individual case. *Associated Independent Dealers, supra.*

Such a sufficient causal connection exists in this case. Norman Perry's death arose out of a routine traffic stop. The officer's investigation and directions to Perry were a necessary concomitant of that stop, and would not have occurred had a vehicle not been in use. Further, the reason for the stop related to the use of the van to tow an antique car. It is foreseeable that insured operative vehicles may be used to tow other vehicles, which may not be insured.[3] Also, Norman Perry was alighting from the towed antique car at the time of shooting; he was physically close to the van/antique unit. Finally, at the time of the accident, the van had its lights on, its motor was still running, and part of the van's body was on the roadway. All of the facts and the circumstances of this case establish that Perry's death was sufficiently related to the use of the van.

This case is similar to *Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648 (Minn.1979). In *Haagenson*, a car collided with a power pole

1. The Court believes that the question of whether Perry was "alighting from" the antique car when he was shot was indeed a fact question suitable for resolution by the jury. In the alternative, if the issue is one for the court to determine, the Court would resolve the question in the same way as did the jury.

2. To the extent that resolution of any of these issues requires determination of questions of fact, this memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

3. That motor vehicles are used for towing is suggested by Coverage P's definition of a "motor vehicle." The definition includes trailers which are connected to or are being towed by motor vehicles.

and plaintiff stopped at the scene of the accident. In the process of reentering his companion's truck, he slipped and fell onto a downed power line. The court found that plaintiff's attempted entry into the truck met the requirement that an injury be causally related to the employment of a vehicle for transportation purposes. In this case, although Norman Perry was not alighting from the van, he was alighting from a towed vehicle literally tied to the van. Further, the death occurred in the context of a traffic stop, while the *Haagenson* injury arose from power lines which are normally not associated with vehicles and traffic.

The relationship between the van and the accident is significantly stronger than the relationships involved in cases cited by defendant. In *Associated Independent Dealers, Inc. v. Mutual Service Insurance Cos.*, 304 Minn. 179, 229 N.W.2d 516 (1975), acetylene equipment in, but not permanently attached to, a van caused a fire. The equipment did not need to be in the van to be used. The court found that the link between the fire and the van was casual; that the fire began while the equipment was in the van and was a fortuity. In this case, use of the van was necessarily an integral part of the events surrounding Perry's death.

*National Family Insurance Co. v. Boyer*, 269 N.W.2d 10 (Minn.1978), involved a gunshot accident which occurred while the victim was changing seats in a car. The car was the "mere situs" of the accident. But in this case, the antique car and, by connection, the van were more than the situs of the shooting; all of the facts and circumstances surrounding the event link the van and the slaying.

Finally, *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598 (Minn.1977), is distinguishable on the ground that the plaintiff's claim was that his injury arose out of the use of a police officer's vehicle. The squad car only transported the policeman to the area where the injury occurred; the incident giving rise to Holm's injury occurred after the police officer completely left his car in order to apprehend Holm, who also was physically separated from his means of transportation, 261 N.W.2d at 602–603.

## II.

■ State Farm contended at trial that it is not obligated to pay benefits in light of an exclusion in the insurance policy. That clause provides that Coverage P does not apply:

(a) To bodily injury sustained by any person

(1) Whose injuries arose out of the ownership, maintenance or use of a motor vehicle owned by an insured and which is not an insured motor vehicle.

Plaintiff's response was that the exclusion would reduce no-fault coverage below that mandated by Minnesota law. At the time of the trial the compatibility of the exclusion with Minnesota law was being considered by the Minnesota Supreme Court. The Supreme Court has now determined that the exclusion is inconsistent with the compensation objectives of the Minnesota No-Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71. *Iverson v. State Farm Mutual Automobile Insurance Company*, 295 N.W.2d 573 (Minn.1980). In light of that decision, the Court finds that the exclusion under Coverage P does not in this case bar the plaintiff from recovery.

## III.

■ Section 4 of the "Policy Conditions" applicable to Coverage P reads as follows:

*Subrogation.* Upon payment under this policy ... the company shall be subrogated to all the insured's rights of recovery therefor and the insured shall do whatever is necessary to secure such rights and do nothing to prejudice them.

Defendant contends that by her November 12, 1977, settlement with the City of Prior Lake, the police officer, and city officials, plaintiff prejudiced defendant's subrogation rights.

The Court has concluded that defendant has waived its Coverage P subrogation rights. After examining Schmitz Deposi-

tion Exhibits 1, 2, 3, 4, 6, 7, 8, and 10, the Court is convinced that Barbara Perry submitted a claim for benefits to State Farm only under Coverage S prior to the settlement. However, the letter from D. C. Schmitz to Leo F. Feeney dated July 25, 1977 (Schmitz Deposition Exhibit 8), denied benefits under Coverage S on two grounds, one of which was that the death of Norman Perry was not "caused by accident." Coverage P similarly requires that the injury or death be "caused by accident." The statement that the death of Perry was not "caused by accident" could reasonably be interpreted as a denial also of benefits under Coverage P.

State Farm thereby constructively denied plaintiff benefits under Coverage P, which relieved plaintiff of her obligation to cooperate with defendant with respect to any settlements. *Havanich v. Safeco Insurance Co. of America*, 557 F.2d 948, 951 (2d Cir. 1977); *Russell Gasket Co. v. Phoenix of Hartford Insurance Co.*, 512 F.2d 205, 209 (6th Cir. 1975). There is no doubt that had plaintiff formally requested benefits under Coverage P her claim would have been denied. Her failure to perform a condition of the contract was induced by a manifestation to her by State Farm that it would not substantially perform its own promise. *See Restatement of Contracts* § 306. Plaintiff was thus not compelled to do a useless act by filing a claim for Coverage P benefits and waiting until defendant denied her claim before settling her lawsuit against the City of Prior Lake and other parties.

### IV.

Minn.Stat. § 65B.54, subd. 2, provided as follows: "Overdue payments shall bear simple interest at the rate of ten percent per annum." 1979 Laws, chapter 190, section 3, effective July 1, 1979, amended that section to provide for fifteen percent interest.

The Court finds that payments on Coverage S were due as of April 27, 1977, the date plaintiff made a claim for such benefits. Because plaintiff did not make a claim for Coverage P benefits on April 27, 1977, interest did not begin to accrue on such benefits on that date. Rather, the date for the beginning of interest is July 25, 1977, the date defendant constructively denied Coverage P benefits and the date after which filing for Coverage P benefits would have been a useless act.

### V.

Accordingly,

IT IS ORDERED that judgment be entered for the plaintiff with respect to Coverage S in the amount of $5,000 plus ten percent interest from April 27, 1977, to July 1, 1979, and fifteen percent interest thereafter, and, with respect to Coverage P, in the amount of $10,000 plus ten percent interest from July 25, 1977, to July 1, 1979, and fifteen percent interest thereafter.