**Aissata McGOFF, Respondent,**

v.

**AMCO INSURANCE COMPANY,
Appellant.**

**No. C4–97–1015.**

Court of Appeals of Minnesota.

Feb. 24, 1998.

Timothy P. Jung, Todd L. Nissen, Peterson & Hektner, Ltd., Minneapolis, for appellant.

Michael W. Unger, Mackenzie & Hallberg, P.A., Minneapolis, for respondent.

Considered and decided by HARTEN, P.J., and HUSPENI and KLAPHAKE, JJ.

### OPINION

HUSPENI, Judge.

Appellant insurer challenges the district court's award of statutory interest in excess of the policy limits. Because we conclude there was no error of law, we affirm.

### FACTS

At the time of her automobile accident in December 1992, respondent Aissata McGoff had a policy with appellant AMCO Insurance Company providing for basic economic loss benefits of $20,000 for medical and related expenses and $20,000 for income loss due to work disability. By May 1993, respondent had collected $5,569.20 in wage loss benefits. AMCO then denied further wage loss claims.

In January 1996, respondent petitioned for arbitration. The arbitrator awarded her the $14,430.80 remaining on her wage loss policy, plus the statutory 15% interest computed from the date of the accident. AMCO paid the $14,430.80, but challenged the interest award in district court, arguing first that, having paid the policy limit, it could have no further liability, and in the alternative that

the arbitrator erred in calculating interest from the date of the accident because interest begins to run from 30 days after the insurer receives reasonable proof of the fact and amount of the loss. Respondent conceded that interest should not have been calculated from the date of the accident and presented the court with a prorated calculation of interest from 30 days after the wage loss payments stopped. AMCO did not object to respondent's calculation. The court ordered AMCO to pay interest running from 30 days after each work week until the later of April 30, 1997, or the date interest was paid. Respondent has conceded that interest actually stopped running on November 13, 1996, when AMCO paid the arbitration award.

AMCO challenges the determination that an insurer can be required to pay statutory interest in excess of the policy limits.[1]

## ISSUE

Is a no-fault insurer liable for statutory interest in excess of the policy limit?

## ANALYSIS

The construction of a statute is clearly a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

Minn.Stat. § 65B.54, subd. 2 (1996), provides that "[o]verdue payments shall bear simple interest at the rate of 15 percent per annum." Minn.Stat. § 645.44, subd. 16 (1996), provides that " '[s]hall' is mandatory." The mandatory nature of Minn.Stat. § 65B.54, subd. 2, is reflected in Minn. R. No–Fault Arb. 32, providing that "the arbitrator *must* award interest when required by [Minn.Stat.] § 65B.54" (emphasis added). The district court found that the arbitrator

correctly awarded statutory interest. We agree.

■ Interest under Minn.Stat. § 65B.54, subd. 2, has both a compensatory purpose, "to compensate the consumer for [the insurer's] use of the funds," and a penal purpose, "to encourage prompt payment of benefits." *Burniece v. Illinois Farmers Ins. Co.*, 398 N.W.2d 542, 544 (Minn.1987). Neither purpose recognized in *Burniece* would be served if we accepted AMCO's position that statutory interest payments cannot exceed policy limits. The insured would receive no more than if the insurer had paid in a timely manner, and is therefore not compensated for the insurer's use of the funds. Also, to the extent the insurer's delay resulted in no negative consequence, timely payment would not be encouraged.

AMCO relies on *Lessard v. Milwaukee Ins. Co.*, 514 N.W.2d 556 (Minn.1994) (addressing the question of interest in the context of underinsured motorist coverage and holding that Minn.Stat. § 549.09, subd. 1(b), providing prejudgment interest on arbitration awards, does not entitle an insured to interest in excess of an underinsured motorist policy limit). We find *Lessard* distinguishable. In that case, the relevant statute awarded interest "except as otherwise provided by contract." *Lessard*, 514 N.W.2d at 559 (quoting Minn.Stat. § 549.09, subd. 1(b) (Supp.1991)). The *Lessard* court found it unnecessary to "reach the question of whether Minn.Stat. § 65B.49 imposes a statutory cap on liability equal to the policy limits." *Id.* Instead, *Lessard* focused on the parties' agreement and the purpose of pre-judgment interest:

> By agreeing to a liability limit for underinsured motorist damages, [insured and insurer] have provided by contract that pre-

1. AMCO also challenges the district court's calculation of interest. We agree with both parties that interest stopped running when payment was no longer overdue. As to when interest started running, we note that AMCO never argued to the district court that it did not receive notice of the fact or amount of appellant's wage loss until September 1996, and no evidence supporting that argument was ever presented to the district court. We are therefore precluded from addressing the argument or reviewing the evidence here. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (a party may not obtain review by raising the same general issue litigated below but under a different theory). We grant respondent's motion to strike from AMCO's brief those materials not presented to the district court. *See* Minn. R. Civ.App. P. 110.01, providing that the record consists of the papers filed in the trial court, the exhibits, and the transcript, if any.

award interest will not be computed in excess of the liability limit.

\* \* \* \*

[B]ecause prejudgment interest is an element of compensatory damages, \* \* \* an insurer providing underinsured motorist coverage is not liable for that portion of preaward interest under Minn.Stat. § 549.09, subd. 1(b) (Supp.1991) which, when added to total damages, would exceed policy liability limits.

*Id.*

Unlike the *Lessard* court, we must address the impact of the no-fault statutory interest provision on policy limits. This analysis differs significantly from that in *Lessard*. Minn.Stat. § 65B.54, subd. 2, does not contain a provision comparable to the "except as otherwise provided by contract" language of Minn.Stat. § 549.09; in its entirety, Minn. Stat. § 65B.54, subd. 2, reads "Overdue payments shall bear simple interest at the rate of 15 percent per annum." *See also* Minn. R. No–Fault Arb. 32 ("the arbitrator must award interest when required by [Minn.Stat.] § 65B.54").

*Lessard* deliberately avoided construing Minn.Stat. § 65B.49, subd. 4a, to provide that an insurer will never have to pay interest in excess of the policy limits. *Lessard*, 514 N.W.2d at 559. It would be an unwarranted extension of *Lessard* for us to read such a provision into the no-fault statutes, particularly absent statutory language specifying that a no-fault carrier would never have to pay more than the policy limit. Nor can the concluding sentence of Minn.Stat. § 65B.49, subd. 4a, providing that "in no event shall the underinsured motorist carrier have to pay more than the amount of its underinsured motorist limits," be construed to limit the explicit language of Minn.Stat. § 65B.54, subd. 2. The concluding sentence in section

65B.49, subdivision 4a, applies to and limits the earlier provisions defining the maximum liability of underinsured motorist carriers.[2] Had the legislature intended an analogous limitation for interest on overdue payments of no-fault benefits, it could have included a similar concluding sentence in Minn.Stat. § 65B.54, subd. 2. In construing statutes, courts are not free to supply "that which the legislature purposely omits or inadvertently overlooks." *Wallace v. Commissioner of Taxation,* 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971).

As a final observation in distinguishing this case from *Lessard,* we note the *Lessard* court's emphasis on the compensatory purpose of prejudgment interest in UIM claims. By contrast, statutory interest pursuant to Minn.Stat. § 65B.54, subd. 2, has a dual purpose—compensatory and penal. *See Burniece,* 398 N.W.2d at 544.

■ Respondent seeks attorney fees under Minn.Stat. § 549.21 (1996), on the grounds that there is no basis in law for appellant's major argument that a no-fault insurer cannot be required to pay interest in excess of the policy limits. Although *Lessard* addresses the question of interest in the context of an underinsured motorist claim, it does, we believe, provide a non-frivolous basis in law for raising the issue in the context of no-fault benefits. Respondent is not entitled to attorney fees under Minn.Stat. § 549.21.

### DECISION

There was no error of law in ordering AMCO to pay interest, calculated from 30 days after the day wage loss was incurred until the arbitration award was paid, even

---

2. We note also that there is a fundamental distinction between no-fault coverage, true first-party coverage defining accident from the perspective of the victim, and uninsured coverage, which is not true first-party coverage and defines accident from the perspective of the tortfeasor. *McIntosh v. State Farm Mut. Auto. Ins. Co.,* 488 N.W.2d 476, 479–80 (Minn.1992). The fact that the legislature intended that underinsured motorist insurers' liability for damages to victims not exceed policy limits does not mean that the legislature also intended that no-fault insurers' penalty for late payment not exceed policy limits. Minn.Stat. § 65B.49, subd. 4a, clearly applies to underinsured motorist carriers' liability for victims' damages. Where a statute clearly limits its application to specifically enumerated subjects, its application may not be extended to other subjects by process of construction. *Griswold v. County of Ramsey,* 242 Minn. 529, 534, 65 N.W.2d 647, 651 (1954).

though that interest exceeds AMCO's policy limits.

Affirmed.