AMERICAN FAMILY INSURANCE GROUP, petitioner, Appellant,

v.

Mark KIESS, Respondent.

No. A03–1764.

Court of Appeals of Minnesota.

June 1, 2004.

LeAnne Bartishofski, Rajkowski Hansmeier, Ltd., St. Cloud, MN, for appellant.

Francis E. Stephens, L. Michael Hall, P.A., St. Cloud, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge, TOUSSAINT, Chief Judge, and HUSPENI, Judge.*

## OPINION

HALBROOKS, Judge.

Appellant American Family Insurance Group challenges the district court's order confirming a no-fault arbitration award in favor of respondent Mark Kiess. Appellant argues that the award should be vacated because (1) the amount of the award, including penalty interest, exceeded the no-fault statute's jurisdictional limit; (2) the arbitrator lacked the authority to award respondent interest on his award; (3) appellant was entitled to collateral-source deductions; and (4) respondent lacked standing to assert the no-fault claim against appellant. We affirm the district court's order with the exception of its calculation of penalty interest, which we remand for modification consistent with this opinion.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Respondent suffered spine and shoulder injuries in a motor vehicle accident in February 1996 when his car was rear-ended. At the time of the accident, appellant was respondent's no-fault automobile insurer. Following the accident, appellant paid no-fault benefits to respondent or on his behalf for approximately six months. In July 1996, an independent medical examiner concluded that respondent required no further medical treatment for injuries arising from the motor vehicle accident. In August 1996, appellant notified respondent by letter of its intent to immediately "deny any further claims or payment for diagnostic testing, chiropractic and/or medical care. All no-fault benefits from your auto policy for [the February 1996] accident will be discontinued at this time." The letter further advised respondent of his "right to demand arbitration of this claim."

In June 1997, as a result of persistent neck symptoms, respondent underwent cervical fusion surgery at a cost of approximately $12,600. Because appellant had terminated respondent's no-fault benefits as of August 1996, respondent submitted his medical bills to Blue Cross and Blue Shield (Blue Cross), his health insurer at the time. Blue Cross paid some of the medical bills, including a portion of the cost of the surgery. Respondent did not submit medical bills to appellant at that time or otherwise notify appellant of the surgery.

In March 1999, Blue Cross notified respondent that the subrogation-recovery provision in his health insurance policy entitled it to recover the amount of benefits paid for hospital expenses if benefits were collected from a third party for payment of those expenses. Respondent subsequently filed a liability claim against the other driver in the February 1996 accident; in September 2001, after respondent settled the claim with the other driver's liability carrier, Blue Cross notified respondent of its intention to waive its subrogation interest in the matter.

In November 2001, respondent filed a petition for no-fault arbitration with the American Arbitration Association (AAA) requesting resolution of the dispute concerning appellant's refusal to honor respondent's claim for medical expenses (the cost of the June 1997 neck surgery) arising out of the February 1996 accident. The petition included an itemization of claim related to the neck surgery for $10,000, the statutory maximum for no-fault claims submitted to binding arbitration. *See* Minn.Stat. § 65B.525, subd. 1 (2002). In order to bring his claim within the statutory limit, respondent waived approximately $2,600 of the cost of the surgery.

In April 2002, following appointment of an arbitrator but before the hearing, respondent submitted an amended itemization of claim that included 57 months of penalty interest totaling $7,125 on the unpaid surgery bills. *See* Minn.Stat. § 65B.54, subds. 1, 2 (2002) (providing that a no-fault insurer must pay 15 percent per annum interest on benefit payments made more than 30 days after receiving reasonable proof of an insured's medical expenses). With the addition of a request for reimbursement of a $60 filing fee, the total amount at issue at the arbitration hearing was $17,185. Before the hearing, the arbitrator rejected appellant's challenge to the AAA's jurisdiction to hear the claim on the grounds that Minn.Stat. § 65B.525, subd. 1, only requires arbitration where the claim is $10,000 or less at the commencement of arbitration.

The arbitrator awarded respondent the full amount of the medical expenses and interest requested in his amended itemization of claim. The arbitrator found that the AAA properly exercised jurisdiction

over the dispute because the interest portion of appellant's claim—the portion in excess of the $10,000 statutory maximum—"is intended as a penalty and is separate from and in addition to a claim submitted by an injured party." The arbitrator also found that respondent's medical expenses arising out of the February 1996 accident were reasonable, necessary, and related to the accident.

Following the award, appellant filed a motion with the arbitrator to reduce the amount of the award by the $10,000 paid by Blue Cross pursuant to the collateral-source statute, Minn.Stat. § 548.36, subd. 2 (2002). The arbitrator denied the motion.

Appellant filed a motion in district court to vacate the arbitration award, arguing that the arbitrator erred or exceeded his authority in (1) extending jurisdiction over the dispute where the total claim, including interest, exceeded $10,000; (2) awarding respondent penalty interest; (3) concluding that appellant was not entitled to collateral-source deductions; and (4) concluding that respondent had standing to assert the claim where the entire claim had already been paid by Blue Cross. The district court denied appellant's motion, issued an order confirming the award, and entered judgment. This appeal follows.

## ISSUES

1. Did the district court err in concluding that the arbitrator has jurisdiction pursuant to Minn.Stat. § 65B.525 (2002) over a dispute where the total claim, including interest, exceeds $10,000?

2. Did the district court err in concluding that the arbitrator was authorized to award interest payments pursuant to Minn.Stat. § 65B.54 (2002)?

3. Did the district court err in concluding that appellant is not entitled to collateral-source deductions pursuant to Minn.Stat. § 548.36 (2002)?

4. Did the district court err in concluding that respondent has standing?

## ANALYSIS

Appellant contends that the district court erred in determining that appellant must pay no-fault benefits and interest under the Minnesota No Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2002), and that it is not entitled to a collateral-source offset under Minn.Stat. § 548.36 (2002). Statutory construction and the application of statutes to the undisputed facts of a case involve questions of law, which we review de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998); *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996).

### I.

■ Minn.Stat. § 65B.525, subd. 1 (2002), provides that the American Arbitration Association (AAA) has jurisdiction to arbitrate no-fault disputes only "where the claim at the commencement of arbitration is in an amount of $10,000 or less." Respondent's initial arbitration petition asserted a claim for $10,000; he then amended his claim prior to the hearing to add a claim for $7,125 in interest. *See* Minn.Stat. § 65B.54, subds. 1, 2 (providing that no-fault benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of loss and mandating that overdue payments bear interest).

Appellant argues that because the sum of the claim and the interest exceeds $10,000, the AAA lacked jurisdiction to hear the dispute. Respondent argues that insofar as the interest is mandated by statute and serves a penal function, it must

not be included in determining the total amount of the claim for the purposes of Minn.Stat. § 65B.525.

The question of whether interest on overdue benefits payments must be included in calculating the $10,000 jurisdictional limit on "the claim at the commencement of arbitration" established by Minn.Stat. § 65B.525 is a matter of first impression. "Claim" is not defined in the no-fault statute. Appellant relies on the supreme court's statement in *Brown v. Allstate Ins. Co.*, 481 N.W.2d 17, 19 (Minn.1992), that "claim ... is simply referring to the amount that the claimant is asking for" in support of its position that the AAA lacked jurisdiction to hear the dispute because respondent was "asking for" more than $10,000. Appellant also cites to the holding in *Brown* that "a claimant with a claim in excess of [the statutory jurisdictional limit] at the time the arbitration petition is filed may waive the excess in order to qualify for arbitration," *id.* at 18, to support its argument that respondent is required to waive the interest portion of his claim in order to meet the $10,000 limit and preserve the AAA's jurisdiction.

We find appellant's reliance on *Brown* misplaced in that *Brown* held only that a claimant may waive medical expenses in excess of the jurisdictional limit in order to bring a no-fault claim within that limit. *Id.* at 19. And, in fact, respondent did that here. Because the amount claimed in *Brown* consisted entirely of medical expenses, the court did not address whether interest arising from an insurer's failure to timely pay those expenses should be included in a calculation of the claim's amount for the purposes of Minn.Stat. § 65B.525. *Brown* is therefore inapposite to the issue before us.

The supreme court has observed that interest under Minn.Stat. § 65B.54, subd. 2, has both a compensatory purpose, "to compensate the consumer for [the insurer's] use of the funds," and a penal purpose, "to encourage prompt payment of benefits." *Burniece v. Ill. Farmers Ins. Co.*, 398 N.W.2d 542, 544 (Minn.1987). Respondent argues that neither purpose recognized in *Burniece* would be served by requiring claimants to include the interest in the claim calculation for the purposes of the jurisdictional limit. Respondent contends that claimants would thereby be forced to either include the interest in the claim or waive it, thereby permitting no-fault carriers who fail to timely pay claims to avoid paying penalty interest.

■ We agree, and find instructive on this point our decision in *McGoff v. AMCO Ins. Co.*, 575 N.W.2d 118, 120–21 (Minn. App.1998), *review denied* (Minn. June 17, 1998), where we concluded that holding a no-fault insurer liable for statutory interest in excess of the insured's policy limit would further section 65B.54's compensatory and penal purposes. Although *McGoff* addressed the claim limit established by the insured's policy, and not the statutory jurisdictional claim limit, the case supports respondent's contention that statutory interest should not be included in determining whether a claim exceeds the statutory limit. In *McGoff*, we wrote that

> if we accepted [the insurer's] position that statutory interest payments cannot exceed policy limits ... [t]he insured would receive no more than if the insurer had paid in a timely manner, and is therefore not compensated for the insurer's use of the funds. Also, to the extent the insurer's delay resulted in no negative consequence, timely payment would not be encouraged.

*Id.* at 119. Because the same reasoning applies here, we conclude that in order to further the penal and compensatory purposes of the statutory-interest provision, interest payments must be considered as

separate from and in addition to the amount of the underlying claim.

We further observe that the AAA's standard Petition for No-fault Arbitration—the form document completed and filed by appellant—limits the types of claims appropriately included in the total amount claimed to "medical claims" and "wage-loss claims." The form makes no reference to statutory interest, indicating that such interest is to be considered separately from the underlying amount claimed. Moreover, the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2002), addresses basic economic-loss benefits in section 44 and interest on overdue payments in section 54, entitled "Reparation Obligor's Duty to Respond to Claims." Therefore, we conclude that the legislature, by providing for benefits and interest in separate statutory sections, did not intend that interest be included in the calculation of the benefits claimed for the purposes of statutory jurisdiction. For these reasons, we conclude that the arbitrator had jurisdiction to hear this matter pursuant to Minn.Stat. § 65B.525.

**II.**

■ Appellant argues that the district court erred in concluding that the arbitrator was authorized to award interest payments against it pursuant to Minn.Stat. § 65B.54. No-fault benefits are "overdue" if not paid within 30 days after the insurer receives "reasonable proof of the fact and amount of loss realized." Minn.Stat. § 65B.54, subd. 1. "Overdue payments shall bear simple interest at the rate of 15 percent per annum." *Id.*, subd. 2. Minn. R. No–Fault Arb. 32 states that "the arbitrator must award interest when required by [Minn.Stat.] § 65B.54."

Appellant terminated respondent's no-fault benefits in August 1996. Following neck surgery in June 1997, respondent submitted medical bills directly to Blue Cross, his health-insurance provider. It is undisputed that appellant did not receive actual notice of the expenses associated with respondent's surgery until November 2001, when respondent submitted the first no-fault arbitration petition.

Appellant argues that it cannot be required to pay interest because it did not receive "reasonable proof of the fact and amount of loss realized" at the time of the surgery as required by statute. Minn.Stat. § 65B.54, subd. 1. Respondent contends that appellant's termination of his benefits in August 1996 constituted a constructive denial of all subsequent claims and that he was thereby relieved of his statutory obligation to provide appellant with actual proof of those claims as they arose. Respondent contends that because filing for benefits after surgery would have been futile in light of appellant's prior termination of his benefits, those benefits became overdue, and interest began to accrue, 30 days after his surgery.

Neither this court nor the supreme court has previously addressed whether a no-fault carrier can be required—under a theory of constructive denial—to pay interest on benefits that become "overdue" by virtue of the carrier's denial of a claim of which the carrier did not receive actual notice.

Respondent's theory of constructive denial is drawn largely from *Perry v. State Farm Mut. Auto. Ins. Co.,* 506 F.Supp. 130, 134 (D.Minn.1980), which held that under Minn.Stat. § 65B.54, when a no-fault carrier terminates benefits, the insured is "not compelled to do a useless act by filing a claim for . . . benefits and waiting until [the carrier] denie[s the] claim before [seeking payment from] . . . other parties." The court in *Perry* concluded that under section 65B.54, subd. 2, "the date for the beginning of interest is . . .

the date [the carrier] constructively denied ... benefits and the date after which filing for ... benefits would have been a useless act." *Id.*

It is undisputed both that appellant had no actual notice of the claims in question at the time they arose and that appellant's termination of respondent's benefits seemingly rendered futile any subsequent attempt by respondent to claim benefits. We must, however, follow the general rule of statutory construction. When the words of a statute are clear and unambiguous, we will not disregard their plain meaning. Minn.Stat. § 645.16 (2002); *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986). Minn.Stat. § 65B.54, subd. 1, plainly provides that the penalty interest is incurred 30 days after the insurer receives "reasonable proof of the fact and amount of loss realized" by the insured. The record before us is clear that appellant had no actual knowledge of respondent's June 1997 medical expenses until respondent filed the arbitration petition in November 2001. On these facts, respondent's theory of constructive denial does not justify the conclusion that appellant had reasonable proof of respondent's loss in June 1997.

Respondent correctly argues that the award of statutory interest is mandated by statute upon an award of contested medical bills. But we disagree with respondent's contention that the interest began accruing 30 days after the June 1997 surgery when respondent had no actual knowledge of the surgery. We therefore hold that the district court erred in awarding respondent interest in the amount of $7,125 and reverse and remand the portion of the district court's order awarding penalty interest for modification consistent with our conclusion, as mandated by statute, that appellant received notice of the fact and amount of respondent's loss on November 1, 2001, when he filed his no-fault petition.

## III.

■ Appellant argues that the district court erred in failing to reduce the amount of the arbitration award by $10,000—the portion of respondent's medical expenses paid by Blue Cross—pursuant to Minnesota's collateral-source statute, which provides in pertinent part:

Subd. 2. Motion. In a civil action, whether based on contract or tort, when liability is admitted or is determined by the trier of fact, and when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources. If the motion is filed, the parties shall submit written evidence of, and the court shall determine:

(1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses except those for which a subrogation right has been asserted; and

(2) amounts that have been paid, contributed, or forfeited by, or on behalf of, the plaintiff or members of the plaintiff's immediate family for the two-year period immediately before the accrual of the action to secure the right to a collateral source benefit that the plaintiff is receiving as a result of losses.

Subd. 3. Duties of the court. (a) The court shall reduce the award by the amounts determined under subdivision 2, clause (1), and offset any reduction in the award by the amounts determined under subdivision 2, clause (2).

Minn.Stat. § 548.36, subds. 2, 3 (2002).

■ The primary purpose of the collateral-source statute is to avoid double re-

covery by a plaintiff. *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 331 (Minn. 1990). Appellant contends that it is entitled to a collateral-source deduction to prevent respondent from recovering the cost of his surgery from both Blue Cross and appellant. We disagree.

In *Stout v. AMCO Ins. Co.*, 645 N.W.2d 108, 114 (Minn.2002), the supreme court considered and rejected a nearly identical argument, holding that a no-fault insurer may not "attempt[] to reduce its obligation to provide basic economic loss benefits on the ground that another source of benefits has stepped in and decreased the amount of the injured person's medical bills—whether by paying them, obtaining discounts, or some other means." In *Stout*, an uninsured pedestrian brought a claim against a no-fault carrier to recover the full amount of his medical expenses, which had been discounted through negotiation by the Department of Human Services. *Id.* at 109–10. The court observed that "a no-fault insurer has a duty to provide basic economic loss benefits to reimburse an injured person's loss even when the injured person is entitled to compensation for the same loss from a different source." *Id.* at 112. The court further stated that because the no-fault insurer's duty is to compensate the insured for the actual expense incurred, and not the amount billed,

> [a] reduction in the amount billed, whether obtained pursuant to a settlement agreement or a health insurer's fee schedule, does not modify the amount of medical expense incurred. We therefore conclude that the medical expense incurred by [the claimant] is the full amount reflected on his medical bills, and not the amount that was paid in satisfaction of those bills as the result of collateral transactions involving [the claimant's] health insurer.

*Id.* at 113 (footnote omitted); *see also Collins v. Farmers Ins. Exch.*, 271 Minn. 239, 244, 135 N.W.2d 503, 507 (1965) (holding that a no-fault insurer must reimburse an insured the amount of medical expenses incurred and "not the amount he paid as a result of a collateral transaction").

As to appellant's argument that allowing respondent to recover from both Blue Cross and appellant would constitute a windfall, *Stout* held that "[u]nder our case law, if there is to be a windfall either to an insurer or to an insured, the windfall should go to the insured." 645 N.W.2d at 114. We therefore conclude that appellant is not entitled to a collateral-source deduction.

## IV.

■ Appellant argues that the district court erred in concluding that respondent had standing to bring a claim for no-fault benefits because Blue Cross had already paid respondent's medical bills and waived its subrogation rights. Appellant's argument on this issue relies on the same logic as its argument concerning the collateral-source deduction: because Blue Cross paid respondent's medical expenses, his right to seek benefits from appellant was extinguished. Like the collateral source analysis, we find *Stout* apposite as to the issue of respondent's standing. In *Stout*, the court held that a claimant may assert a claim against a no-fault carrier for the full amount of medical expenses incurred by the claimant regardless of whether that amount was subsequently reduced as a result of collateral transactions involving the claimant's health insurer. 645 N.W.2d at 113. We conclude that the district court did not err here in applying *Stout* and concluding that respondent had standing to arbitrate the matter.

Appellant argues that *Strand v. Ill. Farmers Ins. Co.*, 429 N.W.2d 266 (Minn.

App.1988), compels a different result. In *Strand*, we held that "[w]hen the no-fault carrier settles a claim directly with a subrogated health insurer, the insured is not entitled to recover the difference between the amount claimed by the health insurer and the amount paid in settlement." *Id.* at 268. But *Strand* is inapposite in that there, the health-insurance carrier paid the claimant's medical expenses, asserted its right of subrogation, and then settled a subrogation claim against the insured's no-fault insurance carrier. *Id.* at 270–71. Here, Blue Cross waived its subrogation right, and appellant did not settle or offer to pay any portion of respondent's medical expenses arising out of the accident. We therefore conclude that respondent had standing to bring his claim for no-fault benefits.

## DECISION

We conclude that the arbitrator properly exercised jurisdiction over this matter after determining that statutory interest payments are not properly included in the statutory claim limit established by Minn. Stat. § 65B.525 (2002). We further conclude that respondent had standing to bring his no-fault arbitration claim and that appellant was not entitled to a collateral-source deduction. We therefore affirm the district court's order awarding respondent $10,000 for medical bills as set forth in his petition for no-fault arbitration. But because we conclude that appellant only received reasonable notice of respondent's claim as of the date of his arbitration petition, we reverse and remand that portion of the district court's order awarding respondent penalty interest for recalculation consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**