**AMERICAN FAMILY INSURANCE GROUP, Respondent,**

v.

**Mark KIESS, Appellant.**

**No. A03–1764.**

Supreme Court of Minnesota.

June 16, 2005.

Francis E. Stephens, L. Michael Hall Law Office, St. Cloud, MN, for Appellant.

LeAnne D. Miller, Rajkowski Hansmeier Ltd., St. Cloud, MN, for Respondent.

James Ballantine, Schwebel, Goetz, & Sieben, Minneapolis, MN, Amicus.

## O P I N I O N

BLATZ, Chief Justice.

Appellant Mark Kiess appeals from a decision by the court of appeals holding that under Minn.Stat. § 65B.54, subd. 1 (2004), respondent American Family Insurance Group (American Family) was obligated to pay interest on a no-fault claim 30 days after American Family received actual notice of the claim, which occurred in this case when Kiess filed a petition for arbitration. Because American Family had notified him that it was discontinuing payment of future claims, Kiess argues that case law and public policy dictate that interest began to accrue 30 days after he received the medical care underlying the claim, approximately 52 months before he filed his arbitration petition. We affirm.

Kiess was injured in a two-vehicle automobile accident in February 1996. At the time of the accident, Kiess had no-fault automobile insurance coverage through American Family, which paid Kiess's no-fault claims for several months following the accident. In August 1996, American Family notified Kiess it was discontinuing his no-fault benefits because, pursuant to an independent medical examination, American Family had determined that Kiess no longer required medical care for injuries related to the accident. In its letter discontinuing no-fault benefits, American Family stated:

> Given the results of the Independent Medical Examination, we must respectfully deny any further claims or payment for diagnostic testing, chiropractic and/or medical care. All no-fault benefits from your auto policy for this accident will be discontinued at this time. You may wish to forward any future medical billings to your health insurance carrier for consideration of payment.

In the same letter, American Family advised Kiess that he had the statutory "right to demand arbitration of this claim if the amount claimed is $10,000.00 or less."

Kiess continued to experience neck and back pain, and in June 1997 he underwent surgery to address these problems at a cost of $12,597.76. Kiess did not submit this additional no-fault claim to American Family or notify the insurer of his surgery at that time. Instead, Kiess submitted his medical bills to his health insurer, Blue Cross & Blue Shield of Minnesota (Blue Cross), which paid the bills in full.

In March 1999, Blue Cross notified Kiess that, under the subrogation-recovery provision of his health insurance policy, Blue Cross was entitled to recover the claims it had paid if Kiess collected benefits from a third party. Kiess, in fact, did file a claim against the other driver in the accident and received a settlement offer of $25,000.[1] Kiess's attorney notified Blue Cross of this settlement offer by telephone and Blue Cross then sent a letter to Kiess's attorney dated September 2001. The letter stated that Blue Cross was waiving its subrogation interest in the matter as a result of the telephone conversation with Kiess's attorney, which caused Blue Cross to conclude that Kiess's accident had "significant causation and liability issues."

In November 2001—two months after Blue Cross waived its subrogation rights—

---

1. The record does not indicate whether Kiess initiated his suit against the other driver's liability carrier before or after Blue Cross notified Kiess of its subrogation rights.

Kiess filed an arbitration petition against American Family, asserting that the insurer was liable for no-fault benefits covering the cost of the surgery paid for by Blue Cross. To bring the $12,597.76 claim within the $10,000 statutory limit for arbitration, Kiess waived $2,597.76 of his claim. *See* Minn.Stat. § 65B.525, subd. 1 (2004). In May 2002, Kiess amended his arbitration petition, claiming that American Family was liable for an additional $7,125 of interest. This amount represented interest for non-payment of the no-fault claim, calculated pursuant to Minn.Stat. § 65B.54, subds. 1 and 2 (2004). When calculating the interest due, Kiess included the 52 months that passed from 30 days after his surgery in June 1997 to the time he filed his petition for arbitration in November 2001. He then added the five months that had passed while arbitration was pending. In all, the interest Kiess demanded covered a total of 57 months.

The arbitrator awarded Kiess $17,125, the full amount of his claim. After the arbitrator denied American Family's motion to reduce the award, American Family moved to vacate the award in district court. The court denied the motion and issued an order confirming the award. American Family then appealed to the court of appeals.

American Family raised four issues at the court of appeals, including whether Kiess was entitled to interest under Minn. Stat. § 65B.54, subd. 1, from the time he incurred his losses or only from the time he provided American Family with actual notice of the losses.[2] In resolving this issue, the court of appeals reversed the district court and held that American

Family's interest liability did not begin when Kiess received the care underlying his no-fault claim. *Am. Family Ins. Group v. Kiess*, 680 N.W.2d 552, 558 (Minn.App.2004). Rather, the court of appeals concluded that American Family's interest liability began 30 days after Kiess provided the insurer with actual notice of his losses, which in this case occurred when Kiess filed his arbitration petition. *Id.* Both Kiess and American Family sought review by this court. We granted Kiess's petition, limiting our review to the court of appeals' interpretation of Minn. Stat. § 65B.54, subd. 1.

■ The Minnesota No–Fault Automobile Insurance Act (Act) is set forth in Minn.Stat. §§ 65B.41–.71 (2004). The section at issue here states in relevant part:

> Basic economic loss benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as * * * expense is incurred. Benefits are overdue if not paid within 30 days after the reparation obligor receives reasonable proof of the fact and amount of loss realized * * *.

Minn.Stat. § 65B.54, subd. 1. Once overdue, payments bear simple interest at the rate of 15% per year. *Id.*, subd. 2. The issue presented is whether, under section 65B.54, subd. 1, an insured is obligated to provide a no-fault carrier with actual notice of a loss incurred in order to be eligible for mandatory interest when the insurer had previously discontinued the insured's no-fault benefits pursuant to an independent medical examination.

■ We review questions of statutory construction de novo. *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277

---

**2.** The other three issues raised by American Family were 1) whether the arbitrator had proper jurisdiction; 2) whether Kiess had standing; and 3) whether American Family was entitled to a collateral-source deduction equal to the amount Blue Cross paid for Kiess's medical claims. The court of appeals affirmed the district court on each of these three issues. *Kiess,* 680 N.W.2d at 555, 560.

(Minn.2000). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2004). "When the language of a statute is plain and unambiguous, that plain language must be followed." *Vlahos v. R & I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 679 (Minn.2004). We construe words and phrases "according to rules of grammar and according to their most natural and obvious usage unless it would be inconsistent with the manifest intent of the legislature." *Id.*

Kiess asserts that by discontinuing his no-fault benefits, American Family constructively denied all of Kiess's future claims and thereby waived its right to receive notice under section 65B.54, subd. 1. According to Kiess, it would have been "futile" for him to continue to submit bills to American Family after his benefits had been discontinued. Thus, even though American Family had paid all submitted claims prior to the discontinuation of Kiess's no-fault benefits and had received no notice that Kiess had incurred subsequent losses related to injuries sustained in the car accident, Kiess contends he is entitled to interest from 30 days after his back surgery in June 1997. Notwithstanding the plain language of the statute requiring reasonable proof of the fact and amount of loss realized, Kiess appeals to "principles of fundamental fairness" and argues that "imposing constructive notice on [American Family] is not inequitable." American Family responds that the discontinuation letter sent to Kiess did not constitute a waiver of its statutory right to receive notice of ongoing medical claims, and that the plain language of the statute dictates that Kiess's benefits should not be considered "overdue" until 30 days after American Family received actual notice of Kiess's additional losses.

We have previously interpreted Minn. Stat. § 65B.54, subd. 1, in other contexts. *See, e.g., Pederson v. All Nation Ins. Co.*, 294 N.W.2d 693, 696 (Minn.1980); *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 653 (Minn.1979). The precise facts of this case present a question of first impression for this court, however. The statute in question expressly provides that benefits are overdue 30 days after an insurer has received "reasonable proof of the fact and amount of loss realized." Minn.Stat. § 65B.54, subd. 1. We conclude that when these words are interpreted according to their most natural and obvious usage, the statute requires insureds to provide insurers with actual notice of additional losses. Concluding otherwise would require us to read the words "proof" and "fact" out of the statute entirely. The parties do not dispute the fact that Kiess did not provide American Family with any notice of the losses he incurred after the discontinuation of his benefits until he filed his arbitration petition. Therefore, Kiess's no-fault benefits were not "overdue" until 30 days after he filed the arbitration petition.

In arguing that we should interpret section 65B.54, subd. 1, to provide for constructive notice, Kiess relies heavily on *Perry v. State Farm Mutual Automobile Insurance Co.*, 506 F.Supp. 130 (D.Minn. 1980). In that case, the federal district court held that an insured's widow was entitled to interest under section 65B.54, subd. 1, from the time her claim was constructively denied. 506 F.Supp. at 134. However, unlike the case at hand, *Perry* involved a contract dispute and focused on the resolution of liability issues. Moreover, the court in *Perry* neither cited nor discussed the requirement in section 65B.54 that interest be calculated from the time an insurer receives "reasonable proof of the fact and amount of loss realized." Because *Perry* did not acknowledge the

statute's notice requirement or discuss how that requirement could be reconciled with a theory of constructive notice, the case provides no guidance in resolving the question at hand.

We are also not persuaded by Kiess's argument that interpreting the statute to allow for constructive notice serves the purposes of the No–Fault Act. *See* Minn. Stat. § 65B.42(1)-(5) (2004). The Act expressly seeks to relieve the "severe economic distress" of automobile accident victims and to assure that accident victims receive "prompt payment" for necessary treatment. Minn.Stat. § 65B.42(1), (3). Interpreting the interest statute to require actual notice promotes prompt payment in two ways. First, because no-fault insurers can only pay claims they know about, the interest statute's notice requirement gives insureds an incentive to submit their claims promptly. Second, insurers are motivated to promptly pay upon notice in order to avoid a 15% interest surcharge. The notice requirement also promotes the relief of the economic distress of accident victims by assuring that once insureds provide insurers with actual notice of any loss, the victims will be compensated for the use of their money if the insurer fails to pay within 30 days. *See Burniece v. Ill. Farmers Ins. Co.*, 398 N.W.2d 542, 544 (Minn. 1987) (stating that the interest statute is intended to compensate insureds for the use of their funds and encourage prompt payment of benefits).

Here, Kiess delayed notifying American Family of his losses for over four years.[3] We do not believe that such a delay is encouraged or supported by the Act's express policy objectives. *See* Minn.Stat. § 65B.42(1)–(5). While Kiess urges the court to recognize his theory of constructive notice and hold that such notice furthers the policies undergirding the Act, we leave it to the legislature to weigh the implications of amending the statute to allow for constructive notice. In doing so, we acknowledge that the responsibility of evaluating the direct or collateral benefits and consequences of such proposed statutory changes are best addressed by the legislature.

On a final note, we disagree with the concurrence's focus on the possible collateral consequences of interpreting the statute in accordance with its plain language and our need to prevent those consequences by applying principles of equitable estoppel.[4] Specifically, the concurrence addresses the hardships imposed on insureds who have no health insurance when no-fault benefits are discontinued. Although we acknowledge the hardship faced by all such situated individuals, the fact that some insureds do not have health insurance does not dictate a different conclusion in this case. The issue is "What does an insured have to do to obtain additional no-fault coverage when the insured disagrees with the insurer's decision that no further testing or care is needed?" Whether an individual has health insur-

---

3. This delay, in whole or part, may have been due to the fact that Blue Cross provided coverage for his medical treatment and Kiess did not have to expend his own funds. Thus one of the purposes of the interest penalty—to compensate for the use of an insured's funds—is not at issue here. *See Burniece*, 398 N.W.2d at 544.

4. The concurrence relies on cases interpreting our Workers' Compensation Act in support of

its argument that equitable estoppel should be applied to the No–Fault Act. The parties do not cite, nor have we found, any precedent in which we have previously applied equitable estoppel to the No–Fault Act. It is not clear whether the cases cited by the concurrence support such a conclusion. Because this issue does not require resolution in this case, we do not address it.

ance does not change the requirement that the insured must bring an arbitration petition in order to determine if additional no-fault coverage is warranted. In recognition of this, the statute is written to encourage prompt resolution of such disputes by requiring both notice to the insurer of an insured's additional claims and payment of interest by the insurer if meritorious claims are not paid within 30 days.

Accordingly, we affirm the court of appeals' decision and hold that Kiess is entitled to collect interest beginning 30 days after he filed his arbitration petition in November 2001. We remand to the district court for proceedings in accordance with this opinion.

Affirmed.

MEYER, J., files concurring opinion joined by PAGE, J.

MEYER, Justice (concurring).

I agree with the majority that Minn. Stat. § 65B.54, subd. 1, plainly states that an insured must provide an insurer with actual notice of losses incurred in order for interest on the claim to begin to accrue. However, I respectfully take issue with the conclusion that—absent legislative intervention—an insurer's conduct can never be interpreted as a waiver of its right to statutory notice. Such a position ignores the realities of the practice of no-fault insurance law in this state and places a heavy burden on insureds—who, the majority now holds, are not eligible for penalty interest under the statute even if they follow plainly-stated directions given to them by their insurance companies to submit their medical bills elsewhere.

The question we face in this decision is whether appellant Kiess is entitled to collect interest under section 65B.54, subd. 1, from the time he incurred his medical bills or only from the time he filed for arbitra-

tion of his discontinued benefits. Here, Kiess received a letter from American Family specifically stating that "[a]ll no-fault benefits from your auto policy for this accident will be discontinued at this time. You may wish to forward any future medical billings to your health insurance carrier for consideration of payment." Accordingly, Kiess submitted the bills he subsequently incurred to his medical insurance carrier, Blue Cross. Blue Cross paid Kiess's surgery bills in full, then waived its subrogation interest in the matter. Kiess subsequently brought a petition for arbitration against American Family for $10,-000—the statutory limit—and $7,125 in penalty interest.

The majority concludes that Kiess is entitled to penalty interest only from the time he filed his petition for arbitration because the statute plainly states that an insurer must pay interest from the time it receives "reasonable proof of the fact and amount of loss realized." Minn.Stat. § 65B.54, subd. 1. I agree with the majority that the statute requires actual notice. However, rather than ending the analysis there, I would go on to apply common law equitable principles of waiver and estoppel and consider whether American Family is barred from asserting its right to statutory notice.

We have previously concluded that, in certain cases, waiver and estoppel defenses are not abrogated by statutes. In *Neuberger v. Hennepin County Workhouse*, 340 N.W.2d 330, 331–32 (Minn.1983), we held that an employer was estopped from pleading a statutory time bar where, based on the employer's statement that he was "just as well off on disability," an employee did not timely file a workers' compensation claim. *See also Kahn v. State*, 289 N.W.2d 737, 745 (Minn.1980) (holding where agent of employer misled the employee's husband into believing her injury was not

compensable, and employee failed to timely file a claim as a result, employer was estopped from asserting the time bar); *Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 775 (Minn.2004) (stating that waiver and estoppel defenses were not superseded or abrogated by statute in question). Similarly, in *L & H Transport, Inc. v. Drew Agency, Inc.*, we stated that "[a] defendant's conduct can be such as to estop that defendant from asserting a time limitation contained in an insurance policy" where it would be "unjust, inequitable, or unconscionable" to allow the defendant to do so. 403 N.W.2d 223, 227 (Minn.1987). In *Neuberger* we stated that our conclusion that the statute did not supersede the worker's right to assert equitable estoppel comported with the "general policy of compensation law, that benefits should be provided for all injuries that are reasonably compensable under the statute." 340 N.W.2d at 332.

The No–Fault Act does not specifically preclude an insured from asserting equitable defenses where the purposes of the Act would be served, and our court has never interpreted the statute to abrogate such defenses. As the majority has noted, the Act expressly seeks to relieve the "severe economic distress" of automobile accident victims and to assure that accident victims receive "prompt payment" for necessary treatment. Minn.Stat. § 65B.42(1), (3). In cases like the one at hand, where an insurance company discontinues an insured's coverage and tells the insured that he "may wish to forward any future medical billings to your health insurance carrier for consideration of payment," the insured should have the right to argue that the insurer is equitably estopped from asserting its right to notice under section 65B.54, subd. 1.

A party seeking to invoke the doctrine of equitable estoppel has the burden of proving (1) that promises or inducements were made; (2) that the party reasonably relied upon the promises; and (3) that the party will be harmed if estoppel is not applied. *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn.1990). In the case at hand, Kiess could not succeed in arguing equitable estoppel because, although American Family induced Kiess to send his bills to his health insurance carrier, and Kiess reasonably relied on those instructions, Kiess could not establish that he was harmed by not receiving statutory interest on a $10,000 windfall. Kiess received necessary treatment that was promptly paid for and thus cannot argue that the purposes of the Act would be furthered by awarding him interest in this case.

However, it is not hard to imagine an injured person in other circumstances who would, in fact, be harmed by relying on the language of a termination of benefits letter like the one American Family sent in this case. Many people do not have health insurance to which they can "forward" additional bills—or they have health insurance with limited coverage or high deductibles. In such cases, a person whose no-fault benefits have been discontinued will likely pay his or her additional medical expenses out of pocket, pay medical expenses on credit, or not seek out necessary additional medical care. In such cases, the Act's purposes—to relieve the "severe economic distress" of automobile accident victims and to assure that accident victims receive "prompt payment" for necessary treatment—are served by equitably estopping an insurer from asserting its right to notice under the statute.

It is at odds with the purposes of the Act to insist that an injured person continue to submit medical bills to a no-fault insurer that has discontinued benefits and directed the injured person to submit his

or her bills elsewhere. In the practice of no-fault law in this state, an insured simply should not bear the burden of having to analyze and interpret discontinuation letters in relation to the larger statutory scheme in order to determine whether to follow the instructions given by an insurance company. Rather, because insurance companies are sophisticated entities well-versed in the nuances and intricacies of the Act, they should bear the risk of being equitably estopped from asserting their right to notice in those cases where the insured has been harmed by reasonably relying on statements in a discontinuation letter.

Thus, I would hold that, in cases in which an insured receives a letter like the one at issue here, then reasonably relies on the insurance company's instructions in such a way that subverts the purposes of the No–Fault Act, the insurer is equitably estopped from asserting its right to notice under section 65B.54, subd. 1.

PAGE, Justice (concurring).

I join in the concurrence of Justice Meyer.